[No. 3,703 AND 3,824.]

### JEFFERSON WILCOXSON AND JAMES FARRIS *v.* ROBERT MILLER, THE CITY OF SACRAMENTO, H. C. KIRK, MOSES SPRAGUE, H. CLARK, L. H. FOOTE AND RAMPKA.

REDEMPTION AS JUDGMENT-CREDITOR.—A person claiming the right to redeem from a sheriff's sale, as a judgment-creditor, must produce for the sheriff a copy of the docket of the judgment, and an attempted redemption is ineffectual without such production, and the sheriff's deed is void.

POWER OF SHERIFF AS TO REDEMPTION.—The power of the sheriff in relation to redemption is purely statutory, and his acts are nugatory unless the provisions of the statute are pursued.

LIEN OF JUDGMENT NOT A CONVEYANCE.—The lien of a judgment is not a "conveyance" within the meaning of the Registry Act.

CONVEYANCE BY JUDGMENT-DEBTOR.—A deed executed before a judgment is recovered against the grantor, but which is not recorded until after the judgment is docketed, is good as against a sheriff's sale made on the judgment, if recorded before the record of the sheriff's deed.

DUTY OF COUNSEL.—When a record contains many deeds, and the case requires an examination of a chain of title, it is the duty of counsel to put an abstract or tabular statement of the chain of title in their briefs.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

Ejectment to recover a tract of land on the south side of the city of Sacramento. The demanded premises were a part of the Rancho New Helvetia, which was granted by Mexico to John A. Sutter. They had been, along with other lands, divided into ten-acre tracts, and were numbered 10, 11, 12, 13, 14, 15, 59, 60, 68, 69, 74, 77, 78 and 79. The defendants were severally in possession of the lots, each one claiming one or more. The plaintiff recovered judgment against defendants Clark and Sprague for lots 77, 78 and 79, and the other defendants had judgment in their favor. The defendants Clark and Sprague appealed from that part of the judgment against them, and the plaintiffs appealed from that part of the judgment in favor of the other defendants. The two appeals were heard together.

The other facts are stated in the opinion.

*McKune & Welty,* for Appellants, Clarke and Sprague.

*G. W. Spaulding* and *P. Dunlap,* for Appellants, Wilcox and Ferris.

*Armstrong & Hinkson,* for Respondent, Kirk.

By the Court, RHODES, J.:

The plaintiffs appear to claim title under two Sheriff's deeds, which purport to have been executed in pursuance of sales of the premises, as the property of Morton. The first deed was made to the plaintiffs as redemptioners—they claiming to hold a judgment lien upon the premises, subsequent to the decree of foreclosure under which the sale was made, and they having paid to the Sheriff a sum of money sufficient to effect the redemption.

A judgment becomes a lien upon real estate from the time it is docketed (Pr. Act, Sec. 204); and it is provided by Section 234 of the Practice Act that a person claiming the right to redeem under a judgment shall produce to the officer from whom he seeks to redeem, a copy of the docket of the judgment. The Sheriff's deed does not recite that the plaintiffs produced a copy of the docket of their judgment; nor was it shown *aliunde* that such copy was produced. When the redemption is attempted to be effected through the Sheriff, he has no authority, either to receive the redemption money from one claiming the right to redeem under a judgment, or to execute a deed to him, unless the redemptioner produces a copy of the docket of his judgment. His power is altogether statutory, and his acts are nugatory, unless the provisions of the statute are pursued. The transcript of the plaintiffs' judgment, which was produced to the Sheriff, is not the equivalent of a copy of the docket of the judgment. The deed therefore did not transfer to the plaintiffs the title of Morton to the mortgaged premises.

The second deed was executed in pursuance of a sale, made under an execution, issued upon the plaintiffs' judgment above mentioned. That deed transferred to the

plaintiffs all the title which Morton then held in the premises therein described. Mesick executed to Morton a deed, dated November 19, 1858, by which he conveyed all his right, title, and interest, etc., in and to a large tract of land, which includes the larger part, if not all, of the lands in controversy; and on the same day Morton executed to Mesick a deed by which he reconveyed to the latter the undivided half of the same interest and estate. The deed of Morton to Mesick was recorded after the plaintiffs' judgment was docketed, but before the deed of the Sheriff to the plaintiffs was recorded. The plaintiffs' claim that the Sheriff's deed has priority over that of Morton to Mesick, on the ground that the lien of their judgment is a conveyance, within the meaning of the Registry Act. But there is nothing in the Act which gives countenance to that position; and there is no ground upon which the priority claimed for their judgment lien can be maintained.

It becomes necessary to ascertain the title of Morton to the premises described in the Sheriff's deed. The record contains three deeds to Morton: Gillespie to Morton, dated June 17, 1858; Mesick to Morton, dated February 2, 1858; and Mesick to Morton, dated November 19, 1858. The title of Mesick will first be noticed, as the plaintiffs seem to rely mainly on the deed of Sutter to Mesick, dated September 14, 1852. Prior to the execution of that deed, Sutter had conveyed certain lands to Robinson and others by the deed bearing date July 1, 1850. By that deed, as we construe it, Sutter conveyed all his title to the Rancho New Helvetia, with the exception of certain lands mentioned in the deed. The only exception in the deed, which has any bearing on the title to the lands in controversy, is the one immediately preceding the *habendum* clause. That exception, as we construe it, only includes lands which had been conveyed by Sutter by deed, which had been duly recorded.

It is claimed that the lands purporting to have been conveyed by Schoolcraft, while acting under a power of attorney from Sutter, come within the exception. But that position cannot be sustained, because the power of attorney did not authorize him to execute conveyances. (*Billings* v. *Morrow,*

7 Cal. 171; *Jones* v. *Marks*, 47 Cal. 243.) The deeds from Sutter to Robinson and others having conveyed to the latter all the lands in that portion of the rancho which includes the lands in controversy, except lands theretofore conveyed by him by deed, which was duly recorded, there was no title left in Sutter upon which the deed to Mesick could operate.

The record exhibits two other deeds to Mesick, which were made before the date of his deed to Morton, to wit: Edwards to Mesick, dated December 9, 1856; and Gillespie to Mesick, dated November 19, 1858. The deed of Edwards purports to convey the land which was excepted in a certain deed of Edwards to Sanders, dated November 30, 1855, but as the latter deed is not produced, the deed of Edwards to Mesick will not be regarded as having conveyed any interest or estate. Gillespie united with Robinson and others in the deed to Sanders of the date of June 23, 1855, whereby Gillespie conveyed to Sanders all the title he then held, which he had acquired by virtue of the deed of Sutter to Robinson and others of the date of July 1, 1850.

Gillespie conveyed to Haggin, by deed, dated June 20, 1851, his interest in a tract of land including a portion or all of the ten-acre tracts; and the interest so conveyed does not appear to be other than that which he acquired through the deed of Sutter to Robinson and others, of July 1, 1850. By virtue of two deeds dated respectively September 8, 1852, and October 28, 1852, Haggin conveyed to Gillespie certain ten-acre tracts, described in those deeds; but Haggin is not shown to have held any interest therein other than what he had previously acquired from Gillespie. The interest which Gillespie acquired by the two deeds last mentioned was transferred to Sanders by the deed of Robinson and others, of the date of June 23, 1855, which was prior to the deed of Gillespie to Mesick.

The deed of Robinson and others to Sanders empowered the latter to sell and convey the lands therein described, "subject to the appeal of said John A. Sutter." This clause of the deed was construed in *Sprague* v. *Edwards* (48 Cal. 239), and it was held that the word "appeal" was

to read "approval," and that a deed made by Sanders without the approval of Sutter did not convey the title. We are satisfied that the construction there given is correct. It follows that the deed of Sanders to Gillespie did not transfer the title, as the deed did not receive the approval of Sutter.

The chain of title commencing with the deed of Sutter, by Schoolcraft, his attorney in fact, to Ringgold and White need not be noticed, for Schoolcraft, as already stated, had no authority to convey lands.

It results from this analysis of those deeds that the "Sutter title" to the premises did not vest in Morton, and that the deed of the sheriff to the plaintiffs did not convey to them any title.

We have given the very voluminous record in this case as careful an examination as we could, under the circumstances, bestow upon it; and that, too, without the aid of an abstract or tabular statement of the several chains of title, except some partial ones which were furnished by the counsel for certain of the defendants. There being no legal points in the case of any considerable difficulty, except as to the sufficiency of the evidence to sustain the findings, a brief which does not contain an abstract or tabular statement of the chain of title upon which the party relies is of no conceivable value. This neglect has imposed upon the Court the performance of duties which manifestly pertain to a counsel.

The judgment in favor of L. H. Foote, H. Rampka, the city of Sacramento, and Henry C. Kirk, and the order denying the plaintiffs' motion for a new trial as to the above named defendants, are affirmed; and the order denying a new trial as to Howard Clark and Moses Sprague is reversed, and the cause remanded for a new trial as to them.

Neither Mr. Chief Justice WALLACE nor Mr. Justice MC-KINSTRY expressed an opinion