HUNTER *v.* SACRAMENTO VALLEY BEET SUGAR Co.

(*Circuit Court, D. California.* March 6, 1882.)

1. POWER OF ATTORNEY.

A power of attorney " to superintend any real and personal estate," and generally to do all things that concern the interest of the principal, and giving the attorney full power to use the name of the principal to release others, or bind the principal, does not empower the attorney to sell real estate.

2. SAME—UNAUTHORIZED SALE—RATIFICATION.

An instrument under seal given to such attorney in fact by the principal, acknowledging himself firmly bound by all the acts of such agent or attorney, and ratifying and confirming whatsoever he had done in his name, and acknowledging the receipt in full of all sums of money, dues, obligations, and other things from such agent or attorney, does not ratify or validate conveyances of real estate made by such attorney acting under such power of attorney.

*H. O. Bealy,* for plaintiff.

*Freeman & Bates* and *J. H. McKune,* for defendants.

SAWYER, C. J. This is an action to recover a tract of land in Sacramento county, being a small portion of the Sutter grant, which grant embraces the city of Sacramento. The plaintiff's title depends upon a conveyance to Samuel Norris, executed by Henry A. Schoolcraft, claiming to act under a power of attorney from John A. Sutter, dated July 28, 1849, and what is claimed to be a ratification of the acts of Schoolcraft by Sutter by deed dated May 20, 1850. On June 28, 1862, Samuel Norris executed to Lloyd Tevis a quitclaim deed to a large amount of property in Sacramento and other counties, consisting of various tracts of land and other property severally specifically described, after which several descriptions is the clause: "also any and all other pieces, parcels, or tracts of land situate in said city and county of Sacramento, or either of them, in or to which I have any right, title, or interest, whether legal or equitable;" under which latter clause whatever right Norris then had in the premises in question passed to Tevis. On May 3, 1871, said Tevis conveyed the premises to the plaintiff, a citizen of Kentucky, the consideration expressed in the deed being one dollar. This is the plaintiff's title. The defendant, the Sacramento Valley Beet Sugar Company, is in possession, deriving title from Sutter through another line of conveyances, one of the conveyances being a deed executed upon a sheriff's sale on a judgment in a case wherein said Samuel Norris was the plaintiff and one William Muldrow and others defendants, under which judgment Norris sold whatever interest the defendants had in the premises. Under this execution sale and sheriff's deed E. B.

Crocker and Robert Robinson went into possession of the premises on May 23, 1858, and continued in possession thenceforth till May 1, 1869, when they conveyed the land and transferred the possession to the defendant, the Sacramento Valley Beet Sugar Company, and said defendant has thenceforth continued in possession till the present time. The value of the premises at the date of the commencement of the action was $20,000.

The plaintiff, in order to recover, must show a *legal* title, and his title depends upon the effect of the power of attorney from Sutter to Schoolcraft of July 28, 1849, and the other instrument executed by Sutter to Schoolcraft claimed to be a ratification of date May 20, 1850. These instruments are set out in full in *Billings* v. *Morrow*, 7 Cal. 173–4, decided in January, 1857, in which case they were both considered, construed, and their effect declared. It was then held that the power of attorney conferred on Schoolcraft no power to convey land. This construction has been frequently recognized in subsequent cases. The decision in *De Rutte* v. *Muldrow*, 16 Cal. 512, is not in conflict with the prior decision on this point. On the contrary, the court says that it is entirely consistent with that case to hold that the power of attorney in question did authorize the making of a lease with a clause giving a right to purchase. There is certainly a broad distinction between the power to make an executory contract for a sale of land and a power to convey land.

One may be made by simple writing; the other is required to be done by deed. I suppose it is competent to authorize one by parol to make, as attorney in fact, an executory contract for the sale of land, even though, under the statute of frauds, the contract itself must be in writing. But a power to *convey* must be under seal, because the deed itself must be under seal. Thus there is a marked distinction between these powers.

In *Jones* v. *Marks*, 47 Cal. 243, the decision in *Billings* v. *Morrow*, although under review, was not questioned on the point that it conferred no power to convey land. Evidently, the court deemed the decision correct on that point, otherwise there would have been no occasion to take so much pains to distinguish it.

In *Wilcoxson* v. *Miller*, 49 Cal. 195, the court expressly held that the power of attorney to Schoolcraft did not authorize him to convey lands. It is said by the court: "It is claimed that the lands purporting to have been conveyed by Schoolcraft while acting under a power of attorney from Sutter came within the exception. But that position cannot be sustained, *because the power of attorney did not*

*authorize him to execute conveyances."* Citing *Billings* v. *Morrow* and *Jones* v. *Marks, supra.* Here is an express holding that it carried no such power. Thus that decision has now stood unquestioned and affirmed by the courts for nearly 24 years. So, also, the instrument, claimed to be a ratification, was construed in *Billings* v. *Morrow,* and held not to contain any ratification of the void conveyances by School-craft. The court says:

"This paper does not upon its face purport to be a ratification of sales made by Schoolcraft, but a deed of settlement between Sutter and his agent, by virtue of the power of the twenty-eighth of July, 1849, in which he, Sutter, 'acknowledges himself held and firmly bound by all his acts as such agent or attorney in fact,' etc. So far as this deed goes, it can only be regarded as a settlement or adjustment of accounts between principal and agent, and *does not contain a single word with regard to any acts of Schoolcraft other than those done by authority of the power of attorney of July* 28, 1849, *to which reference is made.*" 7 Cal. 174.

Thus it is held that upon the face of the instrument it does not purport to ratify any conveyances of land made by Schoolcraft; that "it does not contain a single word with regard to any acts of School-craft other than those done by authority of the power of attorney of July 28, 1849, to which reference is made."

The ratification, therefore, is held to be no broader than the power. And in my judgment this construction is correct. It has not been judicially questioned since, so far as I am aware. It is true, the court goes on to advance other objections to the ratification, such as that it does not appear from the deed, or otherwise, that Sutter was at the time of executing the instrument aware that the agent had exceeded his power by conveying lands. But this is entirely another and further reason against giving effect to the asserted ratification. Other difficulties still are suggested. The instrument is merely what it purports to be upon its face, an acknowledgment of settlement of the matters of the agency between the principal and agent, and a sanction of the latter's acts under the power, and a discharge from any further liability to the principal by reason thereof. It mentions no conveyance of real estate and is no broader in terms than the power. This settlement and discharge were manifestly the purpose of the instrument. Nobody else was a party to it, or had any interest in the settlement. It does not purport to relate to real estate, and could not have been entitled to record; or, if recorded, neither the power of attorney nor the other instrument claimed to be a rati-

fication would have afforded any definite information as to conveyances of real estate. One reading the power or the other instrument would not be put upon inquiry for conveyances.

It is claimed that in this case it is shown by parol evidence that Sutter, at the time of the execution of the ratifying instrument, was aware that Schoolcraft had conveyed these premises, and that one of the objections suggested by the court in *Billings* v. *Morrow* is overcome. If this mode of proof is admissible, then the title to lands would be made to rest in parol, and not upon written evidence. This would certainly be a dangerous principle to adopt. But, however this may be, the verbal evidence upon the subject is too unreliable, especially considering its source and the circumstances surrounding it, at this late day to satisfy the mind.

The most definite testimony, and the only testimony not too vague to be of any value, is that of Norris himself, who, after so long acquiescence in the opposing title, states from memory transactions that occurred more than 30 years before. Titles under which valuable property has been so long held and enjoyed should not be overturned upon testimony so unsatisfactory. But it was held in *Billings* v. *Morrow* that the power of attorney did not authorize the conveyance of land, and that this instrument did not purport to ratify the otherwise void Schoolcraft conveyance. That decision upon these points became a rule of property, which, it must be apparent from the number of cases that have already presented these instruments for the consideration of the supreme court of California, must affect not a little valuable property.

It is not at all unlikely that the defendant may have purchased and improved this very property upon the faith of that decision. Norris himself must have regarded that decision as disposing of his title, for he sold the land under a judgment in his own favor against Muldrow, and the defendant now holds, and it and its grantors have held, the premises under title derived through that sale for nearly 24 years. Thirteen years after conveyance by Schoolcraft to Norris, and four years after the grantees under Norris' execution sale had been in possession, Norris, apparently, after specifically describing all the property he supposed he had, by the general clause before cited from his deed, conveyed whatever interest he had in the premises to Tevis. It is quite evident, I think, from the perusal of the deed, consideration of the property conveyed, and the consideration expressed, that no great importance was attached to this clause, or the property apparently accidently caught by it at the time of the

conveyance. It was probably a mere make-weight. Nine years later the property, being then of the value of $20,000, the defendant and its grantors having been all the time in possession, Tevis conveyed to the plaintiff, upon the nominal consideration, as expressed in the deed, of one dollar. Under the circumstances, Norris and his grantees, during all the time, could have had but little confidence in the title. It must have been considered by them, as well as by those taking the adverse title, as determined by the decision of the supreme court referred to. It is difficult to account for this long acquiescence on any other hypothesis. It should certainly, under the circumstances, require a very clear case—a much clearer one than the present—at this late date, to justify overruling the case of *Billings* v. *Morrow*, which has become a rule of property, or to justify evading it, if that were admissible at all, upon the parol testimony introduced. In either aspect, the case made either upon the law or evidence is, in my judgment, insufficient to justify such action.

Let there be findings and judgment for the defendant.