[Civ. No. 484.   Third Appellate District.—August 15, 1908.]

JAMES A. HUFF, Plaintiff-Respondent; JOE BRIGGS, Intervener-Respondent, v. Mrs. M. J. SWEETSER, and FRANK H. ROSS, Jr., Sheriff of Santa Clara County, Appellants.

INJUNCTION AGAINST EXECUTION SALE—DEFICIENCY JUDGMENT AGAINST MARRIED WOMAN IN MAIDEN NAME—WANT OF NOTICE—PRIOR EQUITIES.—A deficiency judgment having been docketed against a married woman in her maiden name, upon foreclosure of a mortgage executed by her before marriage, it appearing that she had been married prior to the foreclosure suit, and that, before such docketing, she acquired in her married name property from her brother, who, long prior to such suit, had contracted to sell the same to the intervener, who was in possession thereof, after part payment, and that she and her husband conveyed the property to the plaintiff, who paid off an old mortgage thereon, and then contracted to sell the property to the intervener, who made further payments to the plaintiff; *held*, that the plaintiff and the intervener, who took without notice, actual or constructive, of such deficiency judgment, were entitled to enjoin an execution sale of such property thereunder.

ID.—PROTECTION OF INNOCENT PURCHASER—RECORD TITLE OF PROPERTY UNDER DISTINCT NAME.—A subsequent innocent purchaser from a judgment debtor of property acquired and conveyed under a distinct name does not take title subject to the lien of a judgment docketed against the judgment debtor in another name, there being no means under the recording act of ascertaining such lien in connection with the record of the title.

ID.—KNOWLEDGE OF UNMARRIED NAME NOT PUTTING UPON INQUIRY.—The mere fact that innocent purchasers knew the name of the judgment debtor before marriage is not evidence of knowledge or notice that there was a judgment against her in her unmarried name; nor is it sufficient to put them upon inquiry, where they dealt with her with respect to property which she lawfully acquired and conveyed in her married name.

ID.—EFFECT OF JUDGMENT LIEN—GENERAL LIEN—SUBJECTION TO PRIOR EQUITIES.—A judgment lien is not a transfer or conveyance of real property, nor does it create a specific lien on the real estate of the judgment debtor; but it is merely a general lien, and is subject to all prior liens, legal or equitable. It merely confers the right to levy thereon to the exclusion of other adverse interests arising subsequently to the judgment.

ID.—PROPER DOCKETING OF JUDGMENT—CREATION OF LIEN—CORRECT NAME REQUISITE.—In order to create a judgment lien, the judgment

8 Cal. App.—44

alone is insufficient,—it must be properly docketed; and, among other essentials to a proper docketing of the judgment, is that it be docketed against the judgment debtor in his correct name.

Id.—Prior Equity of Intervener not Affected by Failure to Record Contract.—The prior equity of the intervener under his original contract of sale with the then owner of the property was not affected by his failure to record the contract until after the docketing of the judgment. The judgment creditor is regarded as acquiring only such rights as the judgment debtor had when the judgment was docketed.

Id.—Equity of Intervener not Affected by Novation.—The prior equity of the intervener was not destroyed by the novation of the prior contract with the former owner, and substitution of the subsequent owner of the property instead of the original owner as contractor.

Id.—Subrogation to Mortgage Paid to Protect New Owner.—The new owner having paid off a mortgage on the property, which existed prior to the docketing of the judgment, equity would treat him as assignee of that mortgage, if necessary to protect his interests against the judgment lien.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from orders refusing to set aside and vacate the conclusions of law, and amend the same, and to amend the judgment accordingly. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

Will M. Beggs, and W. C. Kennedy, for Appellants.

Rogers, Bloomingdale & Free, for Respondents.

CHIPMAN, P. J.—The action was to have it adjudged that a deficiency judgment docketed against the land claimed by plaintiff is not a lien thereon and for an injunction restraining defendants from selling said land upon an execution. Plaintiff had judgment as prayed for. Defendants moved the court, under sections 663 and 663½, Code of Civil Procedure, to set aside and vacate the conclusions of law, and amend the same, and to amend the judgment in accordance with the amended conclusions of law. The motions were denied and defendants appeal from the judgment and the orders.

About all of the facts essential to a comprehension of the issues appear in the findings of the court, which latter are

supported by the evidence. It appears therefrom that on
October 1, 1898, one E. L. Emerson was the owner of the
premises in question, and upon that day executed a contract
for the sale thereof to intervener Briggs for the consideration
of $1,600, payable in installments as follows: Eight hundred
dollars within three years, and $800 in five years from said
date, with eight per cent annual interest, which said contract
was recorded June 12, 1905; on November 27, 1901, said E. L.
Emerson conveyed said premises to Grace B. M. Odell, and
this deed was duly recorded December 4, 1901; prior to Feb-
ruary 15, 1905, on which date Grace B. M. Odell and her
husband, Frank Odell, conveyed said premises to plaintiff,
intervener Briggs paid various sums on account of said con-
tract of purchase amounting in the aggregate to $1,269.73,
and at the time plaintiff received said deed from said Grace
B. M. Odell, as aforesaid, he executed and delivered to said
intervener Briggs a contract for the conveyance of said prem-
ises for the sum of $1,000, which contract was duly recorded
March 25, 1905, and at all times since the execution of said
contract by said Emerson to said Briggs the latter was and
now is in possession of said premises; the name of plaintiff's
said grantor, Grace B. M. Odell, was formerly Grace B. M.
Emerson, and she was married to her said husband, Frank
Odell, October 28, 1899; prior to her said marriage, to wit,
on May 1, 1897, she had joined with others in the execution
of a certain promissory note secured by mortgage to defend-
ant Mrs. J. M. Sweetser, presumably upon land other than
that in question, executing the same in her name, at that time,
of Grace B. M. Emerson; that subsequent to her said mar-
riage, to wit, on July 25, 1901, an action was commenced,
wherein the said Grace was one of the defendants, for the
foreclosure of a prior mortgage upon the premises covered
by the mortgage of the said Sweetser, in which the latter was
made defendant as a subsequent mortgagee; Mrs. Sweetser
appeared in said action and filed a cross-complaint, for the
foreclosure of her said mortgage, and on May 17, 1902, a
decree was duly rendered in said cause, wherein, among other
things, it was adjudged that there was due and owing to Mrs.
Sweetser upon her said mortgage at the date of the decree,
the sum of $6,175.00; after said sale, and after applying the
proceeds thereof, there remained a deficiency due said Sweet-
ser amounting to $6,236.44, for which amount a deficiency

judgment was docketed in her favor, on June 28, 1902, "against said Grace B. M. Emerson, and in the name of Grace B. M. Emerson" (and others), upon which said judgment there remains due the sum of $3,814.75, with interest; at the commencement of this action and at the time of the entry and docketing of said judgment, the true and correct name of said judgment debtor was Grace B. M. Odell, and not Grace B. M. Emerson. It is further found that at the time plaintiff Huff purchased said premises from said Grace B. M. Odell and executed the contract of sale thereof to intervener Briggs, "neither plaintiff nor Briggs had any notice or knowledge of the aforesaid judgment of said Sweetser against said Grace B. M. Emerson, nor that she claimed any lien by virtue thereof, upon said premises; but they did know Grace B. M. Emerson, both before and after her said marriage." On April 1, 1905, defendant Sweetser, claiming said judgment to be a lien upon the premises in question, caused execution to be issued upon her said deficiency judgment and caused the same to be levied thereon by defendant Ross, sheriff of Santa Clara county, and under and by virtue of the said execution the said sheriff proceeded to advertise said premises for sale, and said defendants intend to, and will sell said premises for the satisfaction of said judgment, unless restrained by judgment and order of the court.

As conclusions of law the court found, (1) that said judgment is not, nor was, a lien upon said premises; (2) that plaintiff Huff and intervener Briggs are entitled to a judgment perpetually enjoining defendants from selling said premises under said judgment, together with costs of suit.

The contention of appellants is, (1) that the judgment docketed June 28, 1902, constituted a lien on the premises; (2) that plaintiff and intervener had actual and constructive notice of said judgment lien; (3) that the findings and conclusions of law are not justified by the evidence.

As to the evidence, it is principally documentary and undisputed. Plaintiff testified that when he took the deed to the property he had no knowledge of the judgment of Mrs. Sweetser against Grace B. M. Emerson; that he knew her when unmarried, and knew of her marriage to Odell. Intervener Briggs testified to his purchase under the contract with E. L. Emerson, in 1898; that he knew Grace B. M. Emerson both before and after her marriage; that up to February, 1905,

he had paid all that was due on his contract except $1,000, and that he now pays his interest and other payments to plaintiff Huff and not to Emerson; that plaintiff Huff advanced the money to pay off a mortgage upon the land. Frank Huff, son of plaintiff, testified that he attended to the business for his father, paid off the old mortgage on the land "and had Mrs. Odell give my father a deed to secure him for the thousand dollars which he advanced. The land is worth about $2,000." He further testified that he had known Mrs. Odell both before and after her marriage. He testified: "I did not have the records searched to see whether there was any judgment against Mrs. Odell or Mrs. Emerson. I took their word that it was all right. Both Emerson and Mrs. Odell said it was all right; that there was nothing against the land except this mortgage which we paid off." Mrs. Sweetser testified that she never knew or heard of intervener Briggs or his contract with Emerson or plaintiff Huff until this suit was commenced. The above is the entire testimony.

There is no evidence to support appellants' contention that plaintiff and intervener had actual notice of the judgment. There is no evidence that after her marriage the judgment debtor "was commonly known by the name of Grace B. M. Emerson," as claimed by appellants. That respondents had personal acquaintance, during all the mentioned times, with Grace Emerson, is not evidence of knowledge of or notice to respondents that there was a judgment against her. In point of fact plaintiff was assured by both E. L. Emerson and Grace Odell that there were no liens except the mortgage lien which plaintiff discharged. When Emerson conveyed to Mrs. Odell in 1901, the deed was made expressly subject to Briggs' contract and also subject to the mortgage which plaintiff paid off. Briggs having paid up his contract except $1,000, Mrs. Odell conveyed her interest to plaintiff, in consideration of his paying this amount by paying off the mortgage, and plaintiff then gave the new contract to intervener Briggs. The legal and equitable title thus passed to plaintiff and intervener, and as to their relation to each other in respect of the title defendants are not concerned.

The pivotal question in the case is this: Was plaintiff charged with constructive notice of Mrs. Sweetser's deficiency judgment lien at the time Mrs. Odell conveyed to him? It is doubtless true that by her marriage Grace Emerson could

not avoid the effect of the lien so far as she was concerned. Appellants cite the case of *Bogart* v. *Woodruff*, 96 Cal. 609, [31 Pac. 618], as "on all-fours with the case at bar"; and so it would be if the question were between the judgment creditor and the judgment debtor. So, also, would be in point the numerous other cases cited, as between these two persons. But there remains still the other question, whether a subsequent innocent purchaser from the judgment debtor, conveying by a different name, property acquired under this different name, takes title subject to the lien of a judgment docketed against this judgment debtor by another name. It must be remembered that Grace M. B. Emerson married Odell in October, 1889, and took title to the land in November, 1901, as Grace M. B. Odell, and that the judgment was not docketed against her, in the name of Emerson, until June, 1902.

Grants are to be recorded in one set of books and mortgages in another. (Civ. Code, sec. 1171; Pol. Code, sec. 4235.) Indexes are to be kept by the recorder showing the names of grantors and grantees, mortgagors and mortgagees. (Pol. Code, sec. 4336.) The judgment docket is to be kept as directed in section 672, Code of Civil Procedure, showing, among other things, the judgment debtors and judgment creditors. "The names of the defendants must be entered in alphabetical order." Section 4204, Political Code, requires the county clerk to keep a general index divided in columns showing, among other things, the plaintiffs and defendants in all suits. It was admitted that a judgment was docketed in favor of Mrs. M. J. Sweetser against Grace B. M. Emerson. No other docket entry is shown. Conceding that it was plaintiff's duty to search the record, what would he have found had he done so? He would have found under the letter "E" in indexes of deeds the conveyance of E. L. Emerson to Grace M. Odell, in November, 1901. Looking under letter "E" for any judgment against Emerson prior to the date of this conveyance he would have found none, for no judgment was docketed until June, 1902. Searching further under letter "O" for judgments against Odell subsequent to Emerson's deed he would have found none. Here his duty would ordinarily have ended in protecting himself against constructive notice of liens affecting the property. But it is urged that because he knew that Grace B. M. Odell was the same person

previously known by him as Grace B. M. Emerson, he was thus put upon inquiry, which, if pursued, would have led to the knowledge of the Emerson judgment lien. It will doubtless be presumed that Mrs. Odell was previously a single woman and was known by her maiden name. But as a married woman may acquire property and may convey it in her name when married (Civ. Code, sec. 1187), we do not think that a person dealing with her with respect to property thus acquired is put upon inquiry as to her business transactions while unmarried, because of the single fact that he knew her as a single woman. *Fallon* v. *Kehoe,* 38 Cal. 44, [99 Am. Dec. 347], is cited by appellants. As we understand that case, it decides that if the true owner conveys property by his true name, though it be different from the name by which he acquired it, the conveyance, when recorded, will operate as constructive notice of the transfer of the title, and will take precedence of a subsequently recorded deed to the same land, executed in the name by which it was acquired, although the subsequent grantee was an innocent purchaser for value. By way of illustration the court said: "If land be conveyed to an unmarried woman, who afterward marries and becomes a widow, and then conveys the land by her last name, there can be no doubt that the record of the deed would impart notice to a subsequent purchaser. . . . In such cases the subsequent purchaser buys at his peril." But the lien created by a judgment is not a transfer or conveyance of the property. (*Wilcoxson* v. *Miller,* 49 Cal. 193.) It is not a specific lien on the real estate of the judgment debtor, but is merely a general lien, and is subject to all prior liens, either legal or equitable. The lien is not an interest in the real estate of the judgment creditor, he having neither a *jus in re* nor a *jus ad rem,* as regards the debtor's property; the lien merely confers the right to levy thereon, to the exclusion of other adverse interests subsequent to the judgment. These principles are laid down and fully supported by cited authorities in *Metz* v. *State Bank of Brownville,* 7 Neb. 165. The statute in Nebraska relating to the docketing of judgments and keeping indexes is somewhat similar to ours, and it was held, in the case just cited, that judgments do not become liens upon real estate until properly indexed, and that purchasers are not required to search for judgment liens further than to examine the

proper index. The judgment in that case was against William Hall, no judgment having been entered against the other defendants. But the index showed the defendants to be "Hill, Theodore & Co.," the other defendants. Hall subsequently conveyed the property involved, and it was held that the index imparted no notice and that the purchaser was not called upon to search beyond the index. It was said: "A subsequent purchaser, however, is affected with such notice as the index entries afford; and if they are of such a character as would induce a cautious and prudent man to make an examination, he must make such investigation, or the failure to do so will be at his peril. But the index in this case imparted no notice to the plaintiff, it being—'Defendants'—'Hill, Theodore & Co.' " We need not hold that under our statute an examination of the index to the judgment docket would be sufficient; or that it would be necessary for the purchaser to examine the judgment docket as well as the index. Had he done so in the present case we do not think he would have found anything to put him upon inquiry as to possible judgments against Mrs. Odell under the name of Emerson. Indeed, it is doubtful whether such a judgment would have imparted constructive notice or would be treated as a lien affecting the rights of a purchaser from the judgment debtor in some other name. It was held in *Davis* v. *Steeps*, 87 Wis. 472, [41 Am. St. Rep. 51, 58 N. W. 769]: That a docket of a judgment against Edward Davis is not, under a statute requiring the entry to set out "the name at length of each judgment debtor," constructive notice to a *bona fide* purchaser of a judgment against E. A. Davis or Edward A. Davis. The court said: "It is only through the medium of a sufficient and legal docketing of the judgment that it can become a lien on the real estate of the judgment debtor; and it is the duty of the judgment creditor to see to it, if he would secure such lien, that his judgment is properly docketed, for, as against a *bona fide* purchaser for value, any material defect or omission in that respect is the fault of the judgment creditor, and the loss, if any, occasioned thereby, will be regarded as his own." (Citing cases.) In order to create a lien the judgment alone is insufficient; it must be properly docketed

and the formalities of docketing, as required by the statute, must be substantially complied with. (17 Am. & Eng. Ency. of Law, 775, 776, and notes; *Eby* v. *Foster,* 61 Cal. 282.) Among other essential requisites to a proper docketing of the judgment is that it be docketed against the judgment debtor in his correct name.

Briggs' contract with Emerson was not recorded until after the Sweetser judgment was rendered and docketed. His rights, however, were not affected by this fact. The judgment creditor is regarded as acquiring such rights only as a debtor had (24 Am. & Eng. Ency. of Law, 123, 124, and notes); and there is nothing in our registration act to change this rule. See *Wilcoxson* v. *Miller,* 49 Cal. 193, in which the opinion was written by the distinguished jurist who tried this case. Nor were Briggs' equities destroyed by the new contract made with plaintiff Huff. It was but a novation of the Emerson contract and substitution of the then owner of the property in Emerson's stead. The equitable principles involved in the transaction will be found considered in *Darrough* v. *Kraft Company Bank,* 125 Cal. 272, [57 Pac. 983], and cases there cited. Huff paid off a mortgage existing prior to the Sweetser judgment, and equity would treat him as assignee of that mortgage, if necessary to protect his interests.

We think the case was rightfully decided, and the judgment and orders are, therefore, affirmed.

Hart, J., and Burnett, J., concurred.