[Civ. No. 1359.   Third Appellate District.—September 22, 1915.]

## IDA D. HAWKE, Appellant, v. THE CALIFORNIA REALTY AND CONSTRUCTION COMPANY (a Corporation), et al., Respondents.

NOTICE—CONFLICTING CLAIMS—INFERENCE—PRESUMPTION—WHEN NOT CONCLUSIVE.—It is a rule both in its application to constructive notice and to actual notice not proved by direct evidence, but inferred from circumstances, that if a party obtains knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put a reasonably prudent man upon inquiry, then it may be a legitimate, and perhaps even a necessary, inference that he acquired the further information which constitutes actual notice; such inference, however, in a case of actual notice, is not a presumption, much less a conclusive presumption, and may be defeated by proper evidence.

ID.—VENDOR'S LIEN—DEED OF TRUST—PRIORITY—NOTICE—BURDEN OF PROOF.—In an action to establish a vendor's lien on real property and to have it declared that such lien is paramount to the lien of a deed of trust executed by the grantee, the burden of proof is upon the plaintiff to show that the trustee and beneficiary had notice of her lien at the time of the execution of the trust instrument, where there is nothing of record to put them on inquiry as to the existence of such lien.

ID.—CASE AT BAR—NOTICE OF VENDOR'S LIEN—BURDEN OF PROOF NOT SUSTAINED.—In this action, it is held that the plaintiff failed to

sustain such burden, and that the trial court was therefore warranted in finding that the trustee and beneficiary prior to or at the time of the execution of the deed of trust had neither actual notice of the plaintiff's alleged equitable right, nor knowledge of any facts which were sufficient to put them upon an inquiry which, if diligently prosecuted, would have led to a discovery by them of the existence of the lien.

Id.—Corporation Grantee—Creation of Debt in Excess of Subscribed Stock—Insufficient Notice of Vendor's Lien.—The trustee and beneficiary are not put upon inquiry by the fact that the grantee of the plaintiff was a corporation, and that the effect of the purchase was to create an indebtedness far in excess of the subscribed capital stock of the corporation.

Id.—Corporation Law—Contracting Debts in Excess of Subscribed Stock—Construction of Code.—Transactions whereby a corporation creates debts in excess of the amount of its subscribed capital stock are, for that reason, neither void nor voidable, but they are within the powers of a corporation, and the provision of section 309 of the Civil Code enjoining a corporation from creating such debts is merely designed to afford a remedy in favor of the corporation and its creditors against those members of the board of directors, by whose improvident or fraudulent exercise of the powers of a corporation, debts are created disproportionate to the subscribed capital stock, and beyond the ability of the corporation to pay.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. J. Trabucco, Judge presiding.

The facts are stated in the opinion of the court.

Edward C. Harrison, and Maurice E. Harrison, for Appellant.

George C. Sargent, for Respondents.

HART, J.—The plaintiff brought this action for the purpose of obtaining a decree declaring her to be entitled to a vendor's lien on the certain real estate specifically described in the complaint and for the foreclosure of such lien.

The answer set up a prior lien in favor of the defendants, Sargent and Anna E. McLennan, upon said real property, which lien was duly recorded in the office of the county recorder of the city and county of San Francisco, wherein said real estate is situated, and asked that in case it be adjudged that the plaintiff has a vendor's lien upon the property de-

scribed in her complaint, it be also adjudged that said lien is subordinate to the lien of a certain deed of trust running to the defendant, Sargent, as trustee, and the defendant, Annie E. McLennan, as beneficiary, and "that plaintiff is entitled to no portion of the sale of said real property, until the claim of said trustee and beneficiary shall have been satisfied in full."

The court, by its decree, adjudged that the plaintiff was entitled to and had a vendor's lien upon the property described in the complaint, but that said lien was subordinate and subject to the lien of the trust-deed, and awarded said Sargent and Anna E. McLennan their costs as against the plaintiff and the plaintiff her costs as against the defendant corporation.

The plaintiff appeals from that portion of the judgment which adjudges that said defendants, Sargent and Anna E. McLennan, have a first lien upon the said real property and that the vendor's lien of the plaintiff is subordinate and subject to the first mentioned lien and awarding the defendants their costs as against the plaintiff, and from the order denying her motion for a new trial.

The controversy here grows out of the following situation: On the thirteenth day of March, 1911, the plaintiff entered into an agreement with I. L. Jacobi and William Larsen, whereby she agreed that upon the organization of the defendant corporation, she would convey to it the real estate described in the complaint and which, as stated, is situated in the city of San Francisco, "for the agreed consideration or price of $10,000.00, to be paid therefor by said defendant corporation upon its organization by its assumption of mortgages then existing thereon held by The Hibernia Savings and Loan Society, a corporation, as mortgagee, securing indebtedness amounting then to $2,725.00, and by its execution and delivery to said plaintiff of its note for the sum of $7,275.00, with interest thereon at the rate of one per cent per month, and its mortgage on said real estate securing the same, which note and mortgage were to be made to said plaintiff by said corporation simultaneously with the delivery to it of the deed conveying said real estate to it." In accordance with the terms of the said agreement, the plaintiff, on the said thirteenth day of March, 1911, placed in the hands of the said Jacobi and Larsen a deed conveying the said property to the

said defendant corporation, to be delivered to it by the said Jacobi and Larsen immediately upon its organization and upon its due execution and delivery to the plaintiff of its note and mortgage as provided by the terms of said agreement.

The defendant corporation was subsequently (August 2, 1911), incorporated and organized, with a capital stock of twenty-five thousand dollars (later reduced to ten thousand dollars) and said Jacobi was made the president and the said Larsen the secretary thereof, in which respective capacities they have acted at all the times mentioned in the complaint.

It is alleged in the complaint that, on the said 2d day of August, 1911, the said Jacobi and Larsen "and said defendant corporation, in violation of the terms of said agreement . . ., all of which terms were then and theretofore known to said defendant corporation, and without the approval or consent or knowledge of said plaintiff, delivered said plaintiff's deed to said defendant corporation without obtaining from said corporation either the note or the mortgage which it was agreed at the time said deed was signed and acknowledged as aforesaid should constitute a part of the consideration therefor; and that on said day the said defendant corporation caused the same to be placed of record in the office of the county recorder of the city and county of San Francisco."

It appears that, between the time of the delivery of the deed by Jacobi and Larsen to the defendant corporation and the time of the incorporation and organization of the latter, said "Larsen had been negotiating with F. P. McLennan, the husband of the defendant, Anna E. McLennan, for the purchase of a piece of real property owned by Mrs. McLennan, and situated on Clay Street in the city and county of San Francisco. The price was finally fixed at $20,500.00. At this stage of the proceedings, Mr. Larsen and Mr. McLennan called upon George C. Sargent, the attorney representing Mrs. McLennan. This was on August 7, 1911. On August 10th, Mr. Sargent drew a deed from Mrs. McLennan to the corporation, and a deed of trust back from the corporation to Mrs. McLennan, in which he was named as trustee, conveying to him in trust both the Larkin Street property (the property in question) and a portion of the Clay Street property. At about the same time, $4,000.00 were paid by the corporation upon the purchase price, to Mrs. McLennan. The deed of trust and the

deed from her to the corporation were recorded on September 13, 1911. The Larkin Street property was vacant at the time. This is shown by Mr. McLennan's reference to it as a 'lot.' ''

As seen, the defendant corporation did not, either before or after the filing for record the deed from the plaintiff conveying to it the property described in the complaint, execute and deliver to the plaintiff a note for the balance due on said property, and consequently no mortgage on said property in favor of the plaintiff was at any time executed and delivered to her by the defendant corporation.

The court found the facts as they are above stated, but further found: ''That neither said George C. Sargent, nor said Anna E. McLennan, nor said Frank P. McLennan, nor any two or more of them, had any knowledge or notice or information of any character of any of the matters alleged in plaintiff's complaint, other than the execution of a deed from said plaintiff to said corporation, nor had they, nor any two or more of them, any knowledge, notice or information of any claims of plaintiff to the real property described in said complaint, until August 1st, 1912.''

The single proposition upon which the decision of this appeal hinges is involved in the attack by the plaintiff upon the foregoing finding upon the ground that it is not justified by the evidence. In support of this proposition, the plaintiff contends that the evidence discloses that the defendant, Anna E. McLennan, and her agents, prior to the date of the transaction resulting in the conveyance of her property to the defendant corporation and the execution by the latter of the trust-deed to the defendant, Sargent, as security for the payment to her of the unpaid balance of the purchase price, were in possession of sufficient information or had actual knowledge of sufficient facts relative to the transaction and agreement between the plaintiff and the defendants, Jacobi, Larson, and the corporation, respecting the property described in the complaint, to put her (Anna E. McLennan) upon inquiry, which, properly prosecuted, would have discovered to her (said McLennan) the existence in favor of the plaintiff of a vendor's lien upon the last mentioned real property.

It is, of course, an elementary proposition, and equally true both in its application to constructive notice and to actual notice not proved by direct evidence but inferred from cir-

cumstances, "that if a party obtains knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put a reasonably prudent man upon inquiry, then it may be a legitimate, and perhaps even a necessary, inference that he acquired the further information which constitutes actual notice. This inference is not, in a case of actual notice, a presumption, much less a conclusive presumption; it may be defeated by proper evidence. If the party shows that he made the inquiry, and prosecuted it with reasonable diligence, but still failed to discover the conflicting claim, he thereby overcomes and destroys the inference. If, however, it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, if prosecuted with reasonable diligence, would certainly lead to a discovery of the conflicting claim, then the inference that he acquired the information constituting actual notice is necessary and absolute; for this is only another mode of stating that the party was put upon inquiry, that he made the inquiry and arrived at the truth. Finally," continues the text from which we are quoting, "if it appears that the party has knowledge or information of such facts as are sufficient to put a prudent man upon inquiry and that he wholly neglects to make any inquiry, or, having begun it, fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute." (Pomeroy's Equity Jurisprudence, pp. 980, 988.)

The question here, then, is whether the record discloses that Mrs. McLennan, or any of her agents in the transactions with the corporation defendant and which are involved in this controversy, possessed information or knowledge of facts prior to said transactions, which were sufficient to put her as a prudent person upon inquiry, the prosecution of which by her, with reasonable diligence, would have disclosed to her the fact of the subsistence of a vendor's lien in favor of the plaintiff upon the property described in the complaint.

Upon the plaintiff rested the burden of proving that the defendant, Anna E. McLennan, had notice of her right to a vendor's lien. (*Wyrick* v. *Weck*, 68 Cal. 8, 10, [8 Pac. 522]; *Garber* v. *Gianella*, 98 Cal. 527, [38 Pac. 458]; *Warnock* v. *Harlow*, 96 Cal. 298, [31 Am. St. Rep. 209, 31 Pac. 166];

*Tillaux* v. *Tillaux,* 115 Cal. 663, 674, [47 Pac. 691]; *Casey* v. *Leggett,* 125 Cal. 666, 671, [58 Pac. 264].)

In *Wyrick* v. *Weck,* it is said that, while it is true that, ordinarily, the defense of a *bona fide* purchaser without notice, is in the nature of new matter, the burden of proving which is upon the defendant, yet where "there were matters *in pais* tending to show notice of plaintiff's rights at the time of such purchase . . . it was necessary for the plaintiffs to make the proof, for without such proof the title must remain where the plaintiffs have alleged it to be—in the defendants," citing section 1981 of the Code of Civil Procedure. That was an action to declare a trust, and compel a conveyance of the trust property to the beneficiaries, the complaint alleging that the defendants held the legal title by conveyance from the original trustee, and that they took with knowledge of the plaintiffs' equities. At the time of the purchase by the defendants, as was true in the case at bar, there was nothing of record to put them on inquiry as to the rights of the plaintiffs, hence it was held, as seen, that the burden of proving notice to the defendants was upon the plaintiffs.

In the case at bar, the defendant, Sargent, was by deed from the defendant corporation vested with the legal title to the land in question as trustee for the benefit of the defendant, Anna E. McLennan, and, as before stated, there was nothing of record to put them upon inquiry as to the rights or equities of the plaintiff in said property. The claimed right of the plaintiff to a vendor's lien was not the outgrowth of a convention or of a written instrument, but was an equity arising only by operation of law, and, having asserted that it was superior to the legal right set up and established by the defendants, it rested upon her to prove by matters *in pais* that such was the fact. As is said in the case of *Bell* v. *Pleasant,* 145 Cal. 410, 415, [104 Am. St. Rep. 61, 78 Pac. 957, 959]: "Equity follows the law, and a legal condition or *status* being once established, the burden of proof of facts necessary in equity to change the *status* is upon him who asserts the equitable right." In this case, therefore, the defendants, having established their legal right to the property in dispute, went as far as they were required to go as against the alleged equitable right of the plaintiff. The burden was then cast upon the plaintiff to establish the superiority of her

asserted equitable right over the legal condition established by the defendants.

There is a class of cases in which the rule as to the burden of proving notice of a prior right to a subsequent purchaser is differently applied, but such application of the rule arises from a situation entirely at variance with the facts of this and other similar cases. In the case of *Bell* v. *Pleasant,* Mr. Justice Shaw, with gratifying clearness, points out the distinction between the two lines of cases. That case itself well illustrates the distinction. There the plaintiff set up and established a legal title to the land there in question as against a legal title thereto subsequently acquired by the defendants. The court, therefore, held that the burden of establishing that they became vested with their title to the property as *bona fide* purchasers in good faith, for value, and without notice of the existence of the prior legal right of the plaintiff was cast upon the defendants. The rule as thus applied is not inconsistent with the rule applied in the case at bar, but is in perfect harmony therewith.

A careful examination of the evidence as it is brought before us has convinced us that the plaintiff failed to sustain the burden thus shown to have been cast upon her (and which she appears to have assumed) and that the court was, therefore, warranted in finding that the defendants, other than the corporation, prior to or at the time of the execution and completion of their transaction with the said corporation affecting the property described in the complaint, had neither actual notice of her alleged equitable right nor knowledge of any facts which were sufficient to put them upon an inquiry which, if diligently prosecuted, would have led to a discovery by them of the existence of the vendor's lien set up in the complaint.

The deed from the plaintiff to the corporation conveying the land in question is not in the record, and we may, therefore, properly assume that there is nothing in its recitals which discloses the existence of the plaintiff's asserted equitable right or which even intimates the existence of any such right.

The plaintiff called as witnesses Frank P. McLennan, husband of the defendant, Anna E. McLennan, and Robert Conning, a searcher of records connected with the City Abstract Company. The latter company conducted a search of the

property described in the complaint for the defendants, Sargent and Anna E. McLennan, preliminarily to their acceptance of said property as part security for the balance to be paid by the corporation on the purchase price of the McLennan property. Conning was placed in charge of that work. His testimony nowhere reveals that while making the search or at any other time while acting for the defendants named, he obtained any knowledge of the equitable claim of the plaintiff or any information which would indicate the existence of any such claim.

Frank P. McLennan conducted the negotiations on behalf of his wife leading to the sale of her property to the corporation and finally to the execution of the trust-deed referred to. These negotiations were had with Larsen, secretary of the corporation, and with whom said McLennan stated he had been acquainted for several years. Up to that time he had never previously met Jacobi, president of the corporation.

Frank McLennan gave no testimony from which it might reasonably be inferred that, while carrying on the negotiations with the corporation involving his wife's property, he obtained any information relative to the plaintiff's lien on the property conveyed by her to the corporation or that said property was not fully paid for by said corporation. He testified that, a short time before the sale of his wife's property to the corporation, Larsen submitted to the consideration of the witness the property described in the complaint as part security for the payment of the balance on the purchase price of the McLennan property. The witness said he thereupon examined the property to be given as such security and declared that he would accept it. "Mr. Larsen," continued the witness, "never in the course of any of his conversations upon the subject said where he got the Larkin Street property (the property mentioned in the complaint). I never asked him. He gave me to understand that it was his or under his control. He gave me to understand that he was in a position to deed it as a security for a loan."

It is true that Frank McLennan testified that he never knew, until the negotiations referred to, that Larsen was a man of any considerable means—in fact, he had until then thought he was a man of very limited means—and that, therefore, when Larsen spoke of several pieces of real property in which he claimed to hold equities (not specifically refer-

28 Cal. App.—25

ring, however, to the property in dispute) he (the witness) was somewhat surprised, as he was not previously aware of his ability to acquire such extensive interests. But we cannot see that the fact that Frank McLennan had been of the opinion that Larsen was not in a financial condition to have acquired such extensive interests in real property would necessarily tend to suggest to his (McLennan's) mind that a vendor's lien existed upon the land conveyed by the plaintiff to the corporation, or that said land was not free from any outstanding equity.

But, upon this question of notice, the plaintiff emphasizes the fact, which was brought out, that, whereas the corporation was capitalized at ten thousand dollars, the fact was that, at the time of the purchase of the McLennan property by it, but three hundred dollars of its capital stock had been subscribed; that, by the terms of section 309 of the Civil Code, a corporation is enjoined from creating any debts beyond its subscribed capital stock; that the effect of the purchase by the corporation on time payments of the land of the McLennans would be to create an indebtedness far in excess of the amount of its capital stock subscribed, and that the purchase of said property did produce that result. It is conceded that neither Sargent nor the McLennans were aware of this fact, but it is declared that their agent, the title company, employed to examine the title to the land in question by the said defendants, learned it in the course of its search, but that, because it failed to appreciate the importance of the circumstance, it omitted to communicate the fact either to Sargent or the McLennans. It is assumed, however, that the knowledge of the fact by the title company was knowledge by its principals, Sargent and the McLennans, and that such knowledge was sufficient to have started Sargent, who is a lawyer and as such was acting for the McLennans in the transactions concerned here, on an investigation of the corporate transactions of the defendant corporation to ascertain whether the corporation was in a position legally to buy the McLennan property and to secure the payment of the purchase price—an investigation which, it is argued, must necessarily have disclosed to Sargent and the McLennans the plaintiff's claim. The proposition is rather far-fetched. The transactions of a corporation resulting in the creation of debts beyond its subscribed capital stock are as much within its corporate powers and as binding

upon it as are transactions creating an indebtedness within its subscribed capital stock. In other words, transactions whereby a corporation creates debts in excess of the amount of its subscribed capital stock are, for that reason, neither void nor voidable. They are within the powers of a corporation, the provision of section 309 of the Civil Code referred to being merely designed to "provide a remedy in favor of the corporation and its creditors against those members of the board of directors by whose improvident or fraudulent exercise of the *powers* of a corporation debts are created disproportionately to the subscribed capital stock, and beyond the ability of the corporation to pay." (*Underhill* v. *Santa Barbara Land, Building & Imp. Co.*, 93 Cal. 300, 310, [28 Pac. 1049].) Therefore, conceding that the defendants other than the corporation were cognizant of the circumstance that the purchase by the latter of the McLennan property upon time payments would have the effect of creating debts in excess of its subscribed capital stock, there was nothing in that fact alone which would be sufficient to put the said defendants upon inquiry as to the validity of the corporation's title to the property described in the complaint. The circumstance, if known to them, could at the most have generated in the minds of the said defendants only a remote suspicion that something might be irregular in the corporation's transactions; but it even could hardly have had that effect upon the defendants, since the corporation tendered to the McLennans security in the nature of a lien upon real property, the legal title to which was in the corporation and which, upon its face, stood free from the embarrassment of any lien or equity.

Thus we have considered all the testimony presented by the plaintiff in support of the only theory upon which she could hope to prevail in this case, to wit, that the defendants, Sargent and Anna E. McLennan, took the land sold by the plaintiff as security for the debt of the corporation to the said McLennan with notice of the rights of the plaintiff as to said property.

The defendant, Sargent, testified in behalf of the defense, but it is unnecessary to enter into a detailed review here of his testimony, for it is sufficient to say that the effect of his testimony was that neither he nor Mrs. McLennan, at any time prior to their transactions with the corporation, had notice or knowledge of any fact or information which

would even remotely suggest an inquiry by them as to any lien or equity the plaintiff had on or in the property in question.

But, as declared, the burden rested upon the plaintiff to sustain the theory of her case, and, as we think we have shown, her proofs upon the question of notice fall far short of establishing that fact. Even if it could justly be said of the testimony presented by her that it was sufficient to create a suspicion that the land in question was embarrassed by some pre-existing equity, still this would not be enough to establish the fact of notice, or, what amounts to the same thing, sufficient to put a subsequent purchaser, mortgagee, or trustee upon inquiry as to the prior right. As was said by Lord Hardwicke, in *Hine* v. *Dodd,* 2 Atk. 276, [26 Eng. Reprint, 569], and approved by Judge Story, in *Flagg* v. *Mann et al.,* 2 Sumn. 551, [Fed. Cas. No. 4847], "there ought to be clear, undoubted notice, and suspicion of notice, though a strong suspicion, is not sufficient to justify the court in breaking in upon the legal rights of the purchaser." And "a purchaser is not bound to take heed of vague rumors, hearsay statements, and the like." (See 2 Pomeroy's Equity Jurisprudence, secs. 597 and 602; *Jackson* v. *Given,* 8 Johns (N. Y.) 137, 140, [5 Am. Dec. 328]; *Miller* v. *Fraley,* 23 Ark. 735; *Foust* v. *Moorman,* 2 Ind. 17; *Evans* v. *David,* 98 Mo. 405, [11 S. W. 975]; *Crossen* v. *Oliver,* 37 Or. 514, [61 Pac. 885]; *Green* v. *Morgan,* (N. J. Eq.), 21 Atl. 857; *Huff* v. *Sweetser,* 8 Cal. App. 689, [97 Pac. 705]; *Vassault* v. *Austin,* 36 Cal. 691, 698; *Tarke* v. *Bingham,* 123 Cal. 163, 166, [55 Pac. 759]; *Prouty* v. *Devin,* 118 Cal. 255, 261, [50 Pac. 380]; *Wilkerson* v. *Thorp,* 128 Cal. 222, 224, [60 Pac. 679]; *Rogers* v. *Wiley,* 14 Ill. 65, [56 Am. Dec. 491].)

The judgment and the order are affirmed.

Chipman, P. J., and Ellison, J., *pro tem.,* concurred.