ROBERT DUN DOUGLASS, GEORGIA SUPPLY COMPANY, FRIC-
TIONLESS METAL COMPANY AND SIMONDS MANUFACTURING
COMPANY, *Appellants,* v. STATE BANK OF ORLANDO, AP-
*pellee.*

Opinion filed June 9, 1919.

Petition for Rehearing denied July 12, 1919.

1.  The method prescribed by Section 2459 General Statutes by
    which a corporation may convey land is permissive, not ex-
    clusive.

2.  A corporation will be bound by amortgage given on its land,
    in its name and under its corporate seal when it appears
    that the making of such mortgage was previously author-
    ized or subsequently ratified by the corporation.

3.  The primary purpose of the statute in requiring "The highest
    amount of indebtedness or liabiltiy to which the corpora-
    tion can at any time subject itself" to be stated in the arti-
    cles of incorporation is to protect the stockholders against
    the acts of reckless or dishonest officials.

4.  Where the stockholders take no steps to prevent   a cor-
    poration contracting debts in excess of the charter limit,
    and such limit is in fact exceeded and the benefits of the
    transaction have accrued to the corporation, the obligation
    is binding both on the corporation and subsequent creditors
    with notice.

5.  A morgage made by a corporation to secure an indebtedness
    in excess of its charter limit, when duly acknowledged and
    recorded, affords constructive notice of its contents and will
    be given priority over judgments subsequently recovered
    against the corporation.

An Appeal from the Circuit Court for Orange County; J. W. Perkins, Judge.

Decree affirmed.

*V. S. Starbuck*, for Appellants;

*Massey & Warlow*, for Appellee.

## STATEMENT.

The State Bank of Orlando filed its bill in equity against the appellants and others to foreclose a mortgage upon real estate made by the Phillips Manufacturing Company to one Henry C. Miller, dated December 17th, 1913, to secure a note for $7,000.00  The mortgage was filed and duly recorded in Orange County on July 22nd, 1914, and was later assigned to complainant. The bill names as defendants the mortgagor, against which a decree *pro confesso* was entered; Charles P. Dow as trustee who answers that he holds a second mortgage on the property for $50,000.00 to secure an issue of bonds floated by the Phillips Manufacturing Company, and the appellants, who are judgment creditors of the mortgagor, the Phillips Manufacturing Company. They answered setting up their several judgments all of which were recovered in August and September, 1916—more than two years after the mortgage sought to be foreclosed was recorded—disclaiming any knowledge of the mortgage and requiring proof thereof, and by Paragraph V specifically averring that the mortgage, if made, is void as against them because the highest amount of indebtedness to which the Phillips Manufacturing Company could subject itself as fixed by its charter was $5,000.00, being less than the sum secured

by the mortgage. This paragraph of the answer was stricken as impertinent. Proof was then taken before a master and a decree finding the mortgage to be a first lien on the property was rendered, from which decree the appellants appealed.

REAVES, CIRCUIT JUDGE. (*after stating the facts.*)— Two primary questions are presented by the record: First, had the corporation the power, as against subsequent judgment creditors, to mortgage its land for a sum greater than the amount of its authorized indebtedness as stated in the charter, and second, is the mortgage in question shown by the evidence to be the mortgage of the Phillips Manufacturing Company?

Considering the last question first, our attention is called to the manner in which the mortgage was executed. The testimonium clause and signature are as follows:

"IN WITNESS WHEREOF, The said party of the first part has caused these presents to be signed in its corporate name by its Secretary and its corporate seal affixed the day and year first above written.

|  |  |
|---|---|
| The Phillips Mfg. Co. | (Seal) |
| By Geo. W. Phillips | (Seal) |
| Secy &. Mgr. | (Seal) |

Two witnesses signed and the impression of the corporate seal appears.

Section 2459, General Statutes, 1906, provides: "Any corporation may conevy land by deed sealed with the common or corporate seal, and signed in its name by its president, vice-president or chief executive officer."

It is apparent that the secretary was not the "chief executive officer," hence the mortgage was not executed in the manner provided by this section of the statute. Counsel concedes however that this statute is permissive—not exclusive—and that it is competent for the directors of a corporation to authorize any competent person to execute a mortgage on corporate property. 7 R. C. L. §647; 10 Cyc. 1198.

But it is argued that no such authority is shown to have been delegated to the secretary in this case. It is true that no such authority is testified to directly in the evidence, but the seal of the corporation was affixed to the mortgage; the corporation received and used the consideration stated therein; knew the mortgage had been given and paid the interest for a number of years. Moreover the mortgage was offered and received in evidence without any ruling as to its competency being obtained from the chancellor, hence it must be regarded by this court as competent evidence. Barnes & Jessup Co. v. Williams, 64 Fla. 190, 60 South. Rep. 787.

Admitting the competency of the evidence above summarized, its sufficiency to show that the mortgage was the mortgage of the corporation, either by previous authorization or subsequent ratification can not be doubted. Allis v. Jones, 45 Fed. Rep. 148; First Nat. Bank v. Kirby, 43 Fla. 376, 32 South. Rep. 881.

It also seems that the record of the mortgage should be held just as effectual, as notice, as if it had been executed by the usual officers. If any competent person may be authorized to execute a mortgage on behalf of a corporation, then by whom it is executed can not affect the notice imputed to subsequent creditors by the records. The

material inquiry in such a case is whether the instrument was properly acknowledeged and recorded, not by what officer or agent it was executed on behalf of the corporation.

Reverting now to the first question, we must determine the relative rights of a mortgagee whose mortgage is for a greater sum than the authorized indebtedness of the corporation as against subsequent lienors.

The statute nowhere provides to what extent a manufacturing corporation may incur debt, but Section 2648 requires "The highest amount of indebtedness or liability to which the corporation can at any time subject itself" to be stated in the articles of incorporation. No penalty is provided in case the corporation shall incur debt to exceed the stated limit, nor is such debt declared to be void, illegal and not enforceable. In fact the statute is wholly silent as to what result shall follow such conduct, and the charter of this corporation is equally silent.

Councel for appellants ably argues that the statute intended it to be "impossible" for a corporation to incur debt to exceed its charter limit, basing his contention chiefly upon the use of the word "can" in the above quoted portion of Section 2648 together with the fact that no penalty is imposed for exceeding the debt limit. We are not warranted in prolonging this opinion to dilate upon the word "can" by discussing its possible shades of meaning. As employed in this statute, however, it certainly implies a restriction or limitation beyond which a corporation may not go when such restriction is timely and properly invoked; but by and against whom, and under what circumstances may the restriction be invoked? And this leads us to inquire for whose benefit the limitation

is imposed? It can hardly be for the benefit of the State primarily—although no doubt the State may take advantage of it in a proceeding to forfeit the charter—because the law allows the stockholders to fix the debt limit without restriction or right of modification in any public authority. It can hardly be for the benefit of those with whom the corporation may deal, because they have no way of keeping up with its transactions nor of knowing the extent of its debts. It must be primarily for the benefit of the stockholders. They fix the limit; they have the legal right to know and the means of finding out what the corporation is doing. If it proposes to exceed the debt limit they have fixed, any stockholder may object and prevent such abuse. "A charter constitutes a contract between the corporation and it stockholders" and they may object to any *ultra vires* act. Cook on Corporations (7th ed.) §669. Should the limit be exceeded, doubtless the obligation may be cancelled if the parties can be put in *statu quo,* and the officers are personally liable to the stockholders for "borrowing in excess of the company's power." Cook on Corporations (7th ed.) §682. In fact to protect stockholders against the acts of reckless or dishonest officials of the corporation is the one practical purpose the limitation can serve and such is doubtless the primary object of the law in requiring a limit to be stated in the charter. Beach v. Wakefield, 107 Iowa 567, 76 N. W. Rep. 688.

Where the stockholders have taken no steps to prevent the corporation exceeding its debt limit, and the limit has been in fact exceeded and the benefits of the transaction have accrued to the corporation, the American authorities quite generally hold that the obligation may be enforced both against the corporation and subsequent creditors.

"Although a statute forbids a corporation from borrowing more than a specified amount, yet if the corporation actually does borrow in excess of that amount, it can not escape payment to the lender."

"Bonds secured by mortgage and issued by a corporation are valid and enforceable, although they exceed in amount the limit prescribed by charter or statute." Cook on Corporations (7th ed.) §760, and authorities cited in notes on page 2810-2813.

"A mortgage securing a debt in excess of the statutory amount is "binding on the corporation as well as its subsequent creditors." Jones on Mortgages (7th ed.) §126a and cases cited in Note 47.

It is unnecessary to state here at length the reasoning by which the courts have reached the conclusion stated. The cases are collated in the text-books above cited and may be obtained by reference thereto. Some of them are: Union National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 173 U. S. 99, 43 L. Ed. 628, 19 Sup. Ct. Rep. 341; Wood v. Corry Water Works Co., 44 Fed. Rep. 146, 12 L. R. A. 168; Central Trust Co. of New York v. Columbus H. V. & T. Ry. Co., 87 Fed. Rep. 815; International Trust Co. v. Davis & Farnum Mfg. Co., 70 N. H. 118, 46 Atl. Rep. 1054; Hawke v. California Realty & Const. Co., 28 Cal. App. 377, 152 Pac. Rep. 959; Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 82 Fed. 124; Allis v. Jones, 45 Fed. Rep. 148. Also see 19 Cyc. 1171.

Some courts hold that inasmuch as the statute does not declare such excess indebtedness void or not enforceable, the courts should not do so; others that after

the corporation has received the benefit of the transaction, it cannot be heard to repudiate the obligation; and still others that it lies with the State to move against the corporaion to forfeit its charter, and not with individuals to question the validity of its transactions.

This court also has settled the general principles controlling this case, quite in line with the authorities above quoted and cited.   Southern Life Ins. & Tust Co. v. Lanier, 5 Fla. 110; Allen v. Freeman's S. & T. Co., 14 Fla. 418, and see especially the first page of the opinion, 428; McQuaig v. Gulf Naval Stores Co., 56 Fla. 505, 47 South. Rep. 2.

In fact we have found no authority holding that a corporation under such circumstances, can avoid legal liability for the money it has received and used, but a few cases say the creditor must disavow the contract by suing on the common counts, and such is the argument of appellants in this case.   But it seems rather technical to say that while the money secured by the mortgage may be recovered, the mortgage as securtiy therefor may not be enforced.   The Iowa Court has aptly said "It is the debt which is prohibited, and not the mortgage, and so long as the debt in any form can be enforced, the mortgage should stand."   Beach v. Wakefield, *supra*.

If the corporation is bound by the mortgage, it would seem that its judgment creditors whose judgments were obtained after the mortgage was recorded, should be equally bound, and the authorities generally so hold.   Fidelity Insurance, Trust & Safe Deposit Co. v. Western Pennsylvania & S. C. R. R. Co., 138 Pa. St. 494, 21 Atl. Rep. 21, 21 Am. St. Rep. 911; Beach v. Wakefield, *supra;* Jones on Mortgages (7th ed.) §126a.

In fact any other holding would be inconsistent with the purpose and effect of the recording statutes. Tyler v. Johnson, 61 Fla. 730, 55 South. Rep. 870; Rogers v. Munnerlyn, 36 Fla. 591, 18 South. Rep. 669.

We have not failed to carefully consider the case of Bell & Coggeshall Co. v. Kentucky Glass Works Co., 106 Ky. 7, 50 S. W. Rep. 2, on which appellants mainly rely, but we are unable to agree that the rule there announced should apply in Florida.

"Under the statute the proper record of a mortgage affords constructive notice of its contents" (Tyler v. Johnson, *supra,*) and if as the Kentucky court holds "Persons dealing with a corporation are charged with notice of the limit of the indebtedness prescribed by its articles," then if a mortgage securing an amount in excess of such limit has been duly recorded, they must be held to know that such limit had theretofore been exceeded, and they can not under such circumstances be heard to impeach the lien of such prior mortgage.

The practicability of the doctrine championed by the Kentucky Court, that a debt created by a corporation in excess of the charter limit is void for the excess, is strikingly illustrated by the limitation imposed by the same court, that one lending money to a corporation to an amount within the charter limit, without knowledge of other loans, the aggregate of which exceed the charter limit, is not affected by the limitation. Citizens' Bank v. Bank of Waddy, 126 Ky. 169, 103 S. W. Rep. 249, 11 L. R. A. (N. S.) 598.

If the corporation can not incur debt to exceed the charter limit, that is if it has not that capacity, the ability or competency, then what difference can it make whether

the indebtedness is in one sum or in numerous small items? And how can it be material whether the creditor knew or did not know? General creditors do not, and can not in practical business dealings, know the aggregate of a corporation's indebtedness. The doctrine seems to have its foundation in the knowledge of the creditor, not in the want of power in the corporation. Even in this view, the judgment creditors in the case at bar could hardly prevail over the mortgagee, because as we have pointed out they must be charged with constructive notice of the mortgage. Whether they had actual notice we are not advised. Although the answer disclaims knowledge, no evidence was offered on that point. In either case they can not complain.

The decree should be affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter ——, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the decree herein be and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.