State, ex rel. Davis, v. Farmers State Bank.

---

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL,
V. FARMERS STATE BANK OF WINSIDE: B. N. SAUNDERS,
RECEIVER, APPELLEE AND CROSS-APPELLANT: OMAHA
NATIONAL BANK ET AL., APPELLANTS AND CROSS-APPELLEES:
FRED W. WEIBLE, APPELLEE AND CROSS-APPELLEE.

FILED OCTOBER 7, 1924.   No. 23567.

1.  Equity: FORFEITURE.  "The intent. not the letter, of the statute
    constitutes the law   A court of equity is always reluctant in the
    last degree to make a decree which will effect a forfeiture."
    *National Bank v. Matthews*, 98 U. S. 621.
2.  Banks and Banking: VOIDABLE CONTRACTS.  A contract by a
    state bank to borrow money in excess of the debt limit authorized
    by its charter is voidable, and not void; and where such contract
    has been fully performed, by the lending of money to such state
    bank and the execution and delivery of notes therefor, the
    borrowing bank cannot refuse payment of the notes, in the
    absence of a statute which so provides.
3.  ———: NONCOMPLIANCE WITH STATUTE.  Where certain re-
    strictions are imposed by statute upon officers of state banks
    for their government in the borrowing of money, it is not compe-
    tent for the judiciary, in the absence of a statute therefor, to
    impose a penalty by forfeiture on the grounds of noncompliance
    with the statute.

APPEAL from the district court for Wayne county: ANSON A. WELCH, JUDGE. *Affirmed in part, and reversed in part.*

*Stout, Rose, Wells & Martin* and *Byron G. Burbank,* for appellants.

*Fred S. Berry, C. M. Skiles* and *Charles H. Kelsey, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, DAY, GOOD, and THOMPSON, JJ.

DEAN, J.

On and before November 7, 1921, the Farmers State Bank of Winside was in a failing condition. On that date all of the bank's affairs and its assets came under the control of the department of trade and commerce. December 6, 1921, the attorney general filed a petition in the district court for Wayne county upon information from the department of trade and commerce to the effect that, from an examination of the reports made to the department by officers of the Winside bank, it appeared to be inexpedient for it to further transact business as a banking corporation. The Winside bank entered its voluntary appearance, confessed the truth of the averments in the attorney general's petition and consented that the court appoint a proper person as receiver to perform the duties required by law.

April 29, 1922, under direction of the department of trade and commerce, the receiver, recently theretofore appointed, began suit against the Omaha National Bank of Omaha, and Fred W. Weible, W. T. Waldron, and L. D. Spalding, being at different times officers and stockholders of the Winside bank, to recover certain collateral obtained by the Omaha bank, and the proceeds thereof, all of which were in possession of and held by the Omaha bank, as security for loans of money made by it to the Winside bank. It appears that the loans were considerably in excess of

State, ex rel. Davis, v. Farmers State Bank.

two-thirds of the capital stock and surplus of the borrowing bank. The receiver prevailed in part, and all defendants appealed, except Mr. Weible. The receiver filed a cross-appeal from that part of the judgment which was adverse to him.

For several years the Omaha bank has been the Omaha correspondent of the Winside bank, and the latter, as occasion required, became a borrower of money from the Omaha bank, and to secure the payment of such loans, as they were made, it pledged, assigned and delivered its bills payable, and other securities, to the Omaha bank. The promissory notes given for the loans were in large part, if not all of them, signed by Weible, Spalding or Waldron, or other Winside bank officers.

The substance of the receiver's contention now is that the Omaha bank unlawfully obtained, and now retains, the bills payable, and the collateral notes and securities, which form the basis of this suit, and which at any time came into its possession, together with all avails and proceeds thereof, as security for the loans in question, and that such collateral, and its proceeds, in excess of two-thirds of the paid-up capital and surplus of the Winside bank, do not belong to the Omaha bank, but lawfully belong to the state of Nebraska for the benefit of the depositors' guarantee fund. Sections 8024-8028, Comp. St. 1922.

From the fact that the loans considerably exceeded the amount which the law permitted the Winside bank to borrow, under its charter, it is argued that the collateral given as security, and the proceeds thereof, should therefore be forfeited by the loaning bank, the latter being chargeable with knowledge of the law and of the limitation of the borrowing capacity of the Winside bank under its charter.

To support this contention the receiver points out that section 5 of the articles of incorporation of the Winside bank reads: "The highest indebtedness of this corporation shall at no time exceed two-thirds of its paid-up capital except for deposits."

600          NEBRASKA REPORTS.          [Vol. 112

State, ex rel. Davis, v. Farmers State Bank.

In respect of the formation of corporations. he cites the following act:

"The articles of incorporation must fix the highest amount of indebtedness or liability to which the corporation shall, at any one time, be subject, which must, in no case, exceed two-thirds of the capital stock: Provided, however, the above limitation shall not apply to * * * deposits in banks." Comp. St. 1922, sec. 462.

Our attention is also directed to the following statute:

"The business of banking, or the receiving of deposits, money or instruments of credit subject to be repaid upon check, draft, certificate, passbook or order; the discounting, negotiating of promissory notes, drafts, bills of exchange, and other evidences of debts; and the loaning of money upon personal or other security is hereby declared to be a quasi-public business and subject to regulation and control by the state." Comp. St. 1922. sec 7983.

It appears, however, that the receiver depends mainly on section 8005, Comp. St. 1922. In a supplemental typewritten memorandum brief he says: "That the legislature intended to, and did, prohibit" the acts complained of in the present case, "by enacting section 8005, cannot be gainsaid."

Section 8005, among other things, provides:

"The aggregate amount of the rediscounts and bills payable of any corporation transacting a banking business in this state shall at no time exceed the amount of its paid-up capital and surplus, except for the payment of its depositors."

It will be noted that this section provides no penalty and, of course, in the absence of legislation providing a penalty, in an act upon which the state relies, we are powerless to supply a penalty. To do so would be judicial legislation of the most pronounced type. It seems that a consideration of the legislation on this subject in this state leads irresistably to the conclusion that the law-making body intended the act, relied upon by counsel, to be directory, and not mandatory. It is interesting to note that

section 8005, as amended in 1923, contains a provision which reads in part:

"Provided, however, any bank may, with the written consent of the secretary of the department of trade and commerce, rediscount paper in an amount in excess of its paid-up capital stock and surplus, and no bank shall, without such consent, transfer as collateral to its obligation assets with a face value of more than one and one-half times the amount of such obligation. Any transfer of assets of a state bank in violation of this section shall be void as against the creditors of such bank, and any officer or employee of such bank who does, or permits to be done, any act in violation of this section, and any other person who assists in the violation of this section, shall be guilty of a felony and shall be punished by a fine of not more than one thousand dollars ($1,000), or by imprisonment for not more than five years." Laws 1923, ch. 190, sec. 1.

Of course it goes without saying that the 1923 amendment can have no direct application to the facts before us. But it shows that the legislature was evidently of the opinion that the act, as it formerly stood, did not provide a penalty for its violation, hence an amendment was added which, with other matter in respect of rediscounts, now, in specifically drastic terms, provides a penalty. So that, by the subsequent amendment, we have the legislative view that section 8005, Comp. St. 1922, prior to the amendment, did not contemplate the penalty of forfeiture for which the receiver contends. Otherwise, it seems that the act would not have been amended.

In this connection defendants point out, in their supplemental brief, on reargument, that, while section 8005 provides no penalty, the following sections of the banking act, namely, sections 7984, 7994, 8001, 8002, 8008, 8010, 8012, 8013, 8018, 8025, and 8034, Comp. St. 1922, all provide penalties, either by fine or imprisonment, or both, for a violation by state bank officers of the things which state banks and their officers are, in the enumerated statutes, herein, respectively prohibited from doing. But it is not contended

602          NEBRASKA REPORTS.          [VOL. 112

State, ex rel. Davis, v. Farmers State Bank.

that the case before us, in its present form, comes within the terms of any of the foregoing sections of the act which provide penalties for their violation. Clearly it does not do so.

The questions involved here are not altogether new in this state. And, besides, the supreme court of the United States has many times had occasion to pass upon questions involving the same principle which is here under discussion and the cases will be presently noted.

In a recent case we held that, where a corporation retains the fruits of an unauthorized contract, it cannot successfully plead that the contract was *ultra vires* of its charter. *Griffin v. Bankers Realty Investment Co.*, 105 Neb. 419. In *Smith v. First Nat. Bank*, 45 Neb. 444, it was argued that it was *ultra vires* of the bank to lend money on certain security therein described. But Judge Irvine, in writing the opinion for the court, said that, even if it were *ultra vires*, this would not render a mortgage void which was given to secure a loan then made and that the borrowers could not successfully attack it for that reason. The opinion continues: "The violation of law in this respect does not avoid the transaction, and only the government, by appropriate proceedings, can attack it. This also answers the contention that the security was void because the loan was more than 10 per cent. of the bank's capital."

In the *Smith* case, last above cited, the court invokes the rule announced in *National Bank v. Matthews*, 98 U. S. 621. In this case Hugh B. Logan and Elizabeth Matthews executed and delivered to Sterling Price & Company their joint and several promissory note for $15,000 for a certain debt contracted by them. Payment was secured by a deed of trust executed by Elizabeth Matthews covering certain land owned by her. Shortly thereafter, the note and deed of trust were assigned to the Union National Bank of St. Louis by Price & Company as security for a loan of money. The debt was not paid at maturity and the bank directed the trustee, named in the deed of trust, to sell the land. Elizabeth Matthews, as plaintiff in the Missouri

court, thereupon sought to enjoin the sale of her land on the ground that the loan by the bank to Price & Company was made upon real estate security, which was forbidden by law, and that the deed of trust was therefore void. She prevailed in the trial court and the decree was affirmed by the supreme court of Missouri.   On appeal to the supreme court of the United States the judgment was reversed.   Mr. Justice Swayne delivered the opinion of the court, and among other things said:

"The intent, not the letter, of the statute constitutes the law.   A court of equity is always reluctant in the last degree to make a decree which will effect a forfeiture. The bank parted with its money in good faith.   Its garments are unspotted.·  Under these circumstances, the defense of *ultra vires,* if it can be made, does not address itself favorably to the mind of the Chancellor.   *   *   * We ˙cannot believe it was˙ meant that stockholders, and perhaps depositors and other creditors, should be punish-, ed and the borrower rewarded, by giving success to this defence whenever the offensive fact shall occur.   The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other contemplated by congress.   That has been always the punishment prescribed for the wanton violation of a charter, and it may be made to follow whenever the proper public authority shall see fit to invoke its application.   A private person cannot, directly or indirectly, usurp this function of the government."

See, also, *Iowa State & Savings Bank v. City Nat. Bank,* 106 Neb. 397, citing *Thompson v. St. Nicholas Nat. Bank,* 146 U. S. 240, wherein Mr. Justice Blatchford, at page 251, said:

"Moreover, it has been held repeatedly by this court, that where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private

604 NEBRASKA REPORTS. [VOL. 112

State, ex rel. Davis, v. Farmers State Bank.

parties. *National Bank v. Matthews*, 98 U. S. 621; *National Bank v. Whitney*, 103 U. S. 99; *National Bank of Xenia v. Stewart*, 107 U. S. 676."

In *Grand Valley Water Users' Ass'n v. Zumbrunn*, 272 Fed. 943, this is said:

"The fact that notes given by a corporation for money loaned to it made its indebtedness exceed the amount authorized by its charter does not render the notes invalid, in the absence of a statute imposing such penalty. A contract by a corporation to borrow money in excess of the debt limit authorized by its charter is voidable, and not void; and where it has been fully performed, by the lending of money to the corporation and the execution of notes therefor, the corporation cannot refuse payment of the notes."

In *Fritts v. Palmer*, 132 U. S. 282, it was held that the penalty of personal liability imposed by statute upon officers, agents and stockholders of a corporation, in case of noncompliance with the provisions of a statute imposing a penalty for such violation, having apparently been deemed by the state legislature sufficient to effect its object, it was not competent for the judiciary to enlarge that penalty by forfeiture on the grounds of noncompliance with the statute.

As we review the legislation and the authorities, it seems to us that the legislature contemplated, as pointed out by Mr. Justice Swayne in the *Matthews* case, and equally emphasized in the *Fritts* case, that the impending danger of action by the state, under the penal sections of the banking acts, is doubtless "the check," upon bank officers, which was contemplated by the legislature.

The receiver cites *American Southern Nat. Bank v. Smith*, 170 Ky. 512, in support of his argument. We know of no other jurisdiction which holds to the rule of forfeiture announced in the above case, and, in view of the act in question, upon which the receiver relies, which does not provide a forfeiture, and in view of our former decisions and of other authorities, cited herein, holding to the

contrary under similar acts, we decline to adopt the views announced by the Kentucky court.

The conclusion is that the judgment is erroneous, and it is reversed in so far as it denies to the defendant bank the right to hold the collateral, and the proceeds thereof, as security for the full amount of the loans for which the collateral was pledged. In all other respects, the judgment is affirmed.

It is ordered that a judgment be entered in the district court in conformity with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.

Note.—See Banks and Banking, 7 C. J. p. 596, sec. 240; Equity, 21 C. J. p. 100, sec. 76; p. 103, sec. 79—Statutes, 36 Cyc. p. 1106.