ORGAN ET AL. *v.* WINNEMUCCA STATE BANK &
TRUST CO. ET AL. (THE BANK OF CALIFORNIA,
NATIONAL ASSOCIATION, INTERVENER).

No. 3025

November 3, 1933.                    26 P.(2d) 237.

*Gray Mashburn* and *Merwyn H. Brown,* for Appellants:

*Pillsbury, Madison & Sutro,* for Respondent:

**OPINION**

By the Court, DUCKER, J.:

In this case E. J. Seaborn, the bank examiner of Nevada, was appointed receiver of the Winnemucca

State Bank & Trust Company, a banking corporation of Nevada, at the suit of appellants, directors thereof, and the corporation was dissolved. Thereafter the respondent, the Bank of California, National Association, was by order of the court permitted to intervene. The case comes before us on an agreed statement of facts. Those necessary to state are as follows:

The motion was heard by the trial court on the petition for intervention and reply thereto by appellants. Prior to the time the bank examiner had taken possession of the property and business of the Winnemucca State Bank & Trust Company and its doors were closed on or about January 4, 1932, it had become indebted to respondent in the principal sum of $117,500. The major portion of that sum, to wit, $97,500, evidenced by five promissory notes, had been loaned prior to November 30, 1931. The balance, or $20,000, evidenced by a sixth promissory note, had been loaned on November 30, 1931. Certain assets of the Winnemucca State Bank & Trust Company had been given as security for the sum evidenced by the first five notes, and certain other assets had been given as security for the said sum of $20,000.

Prior to and on the 30th day of November 1931, and up to and including the 4th day of January 1932, when the Winnemucca State Bank & Trust Company was closed by the bank examiner, the amount of its paid-up capital was $100,000. When the last loan was made the Winnemucca State Bank & Trust Company had borrowed money in excess of its paid-up capital and had attempted to pledge its assets as collateral security for the payment of said last-mentioned loan in the sum of $20,000.

In the foregoing transaction the respondent acted in entire good faith.

The matter was heard by the trial court on September 17, 1932, and by stipulation of the parties all matters and questions in reference to the first five notes and all security pledged for the payment of the same were finally settled and determined by an order of the court

to the satisfaction of all parties concerned. The only matter submitted for the consideration and decision of the court on the 17th of September was the question of law as to the validity of the pledge of the assets of the Winnemucca State Bank & Trust Company to respondent as collateral security for the payment of said loan in the sum of $20,000. The court held that the pledge of the assets by the Winnemucca State Bank & Trust Company to the respondent as security for the payment of said loan in the sum of $20,000 was legal and valid.

Appellants contend that under section 684 Nevada Compiled Laws 1929, as amended by chapter 35, page 41, Stats. 1931, the Winnemucca State Bank & Trust Company, and the officers thereof, had no authority, and each of them acted beyond their authority, to borrow money in excess of the paid-up capital of the said bank, and in endeavoring to pledge its assets as collateral security therefor on the 30th day of November 1931, in connection with said loan of $20,000, and that by reason thereof the pledge of said assets as security for the payment of said loan in the sum of $20,000 was unlawful, null, and void.

The section amended reads: "No bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security or otherwise; provided, however, that any bank may secure funds deposited with such bank by the United States, state, or counties of the state by pledging acceptable assets of the bank as collateral security; provided further, that any bank may borrow money for temporary purposes, not to exceed the amount of its paid-up capital, and may pledge any of its assets as collateral security therefor; provided further, that when it shall appear that a bank is borrowing habitually for the purpose of conducting its business, the bank examiner may require such bank to pay off such borrowed money. Nothing herein shall prevent any bank from rediscounting in good faith and indorsing any of its negotiable notes."

It is admitted by appellants that the $20,000 is a just claim against the Winnemucca State Bank & Trust Company, but they contend that the effect of said section is to prevent respondent from satisfying its indebtedness out of the security for it.

We are of the opinion that both are valid as against the Winnemucca Bank & Trust Company. They are also valid as against the receiver who has joined in this appeal. He stands in no different position as to the obligations of the bank at the time of his appointment than the bank. Irving Nat'l. Bank v. Second Judicial Dist. Court, 47 Nev. 86, 217 P. 962.

It will be observed that section 684 provides no penalty for violating the provision concerning the giving of a preference or for acting in excess of the authority granted in regard to borrowing money and pledging any of its assets, as collateral security therefor. There is nothing in the section or elsewhere in our statutes either by expression or implication which indicates that the legislature intended that the borrowing of money by a bank in excess of its paid-up capital or that the pledging of its assets to secure such loan would invalidate the transaction.

It is interesting to note that the legislature of 1933 has declared any indebtedness contracted by a bank in excess of its paid-up capital null and void in its entirety. Stats. 1933, c. 190, p. 310. This indicates that the legislature considered the preceding language of the above section which is similar to the language of the section under consideration insufficient to declare a penalty of forfeiture. We, however, have not the power to read such a provision into our former banking law, and in its absence we are unwilling to hold that an ordinary commercial transaction of the character involved in this case is void.

Appellants argue that the first part of the section, to wit, "No bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security or otherwise," is the main or primary part of the law; that the sole reason and purpose of

this express prohibition was for the protection of the general depositors of the bank; that what follows in the section constitutes exceptions to the prohibition against the giving of a preference; and that this prohibition discloses the legislative intention to declare the pledging of the assets of a bank as collateral security for money borrowed in excess of the amount of its paid-up capital null and void.

We may concede without deciding all of these contentions except the conclusion. As previously stated, the legislature of 1933 was not of this opinion, else it would not have incorporated in the section: "Any indebtedness, however, contracted in excess of the amount limited herein, shall be null and void in its entirety."

Conceding that the purpose of the section was the protection of depositors in a bank, it does not follow that the legislature intended the protection to be enforced by forfeiture, especially where the transaction had been entered into in good faith. The law abhors a forfeiture. The weight of authority does not support appellants' theory. In the case of State ex rel. Davis v. Farmers' State Bank of Winside, 112 Neb. 597, 200 N. W. 173, 174, a receiver had been appointed who brought suit against the Omaha National Bank of Omaha and others to recover certain collateral obtained by the Omaha bank held as security for loans of money made by it to the Winside bank which were considerably in excess of the indebtedness permitted by the charter of the borrowing bank. The receiver prevailed in part in the lower court and filed a cross - appeal from that part of the judgment which was adverse to him. In the supreme court he relied mainly upon section 8005 of the Nebraska laws (Comp. Laws 1922), which, among other things, provided: "The aggregate amount of the rediscounts and bills payable of any corporation transacting a banking business in this state shall at no time exceed the amount of its paid up capital and surplus, except for the payment of its depositors." Notwithstanding this statute

the supreme court held that the Omaha bank had the right to hold the collateral and the proceeds thereof as security for the full amount of the loans for which the collateral was pledged. Concerning the section relied on the court said: "It will be noted that this section provides no penalty and, of course, in the absence of legislation providing a penalty, in an act upon which the state relies, we are powerless to supply a penalty. To do so would be judicial legislation of the most pronounced type. It seems that a consideration of the legislation * * * in this state leads irresistibly to the conclusion that the lawmaking body intended the act, relied upon by counsel, to be directory, and not mandatory."

The foregoing case, which is squarely in point with this case, has been approved by later Nebraska decisions. Among them is the case of Nebraska National Bank v. Parsons et al., 115 Neb. 770, 215 N. W. 102, 103. In the course of its opinion in the case last cited, the court said: "It is argued by defendants that the guaranty is void because the guaranteed notes exceed in amount an indebtedness beyond the power of the corporations to incur. The argument is based on the proposition that the indebtedness exceeds the statutory limit on corporate power. Excessive indebtedness does not necessarily invalidate contract obligations, * * * and legislation to that effect has not been pointed out." Bank of College View v. Nelson, 106 Neb. 129, 183 N. W. 100; State v. Farmers' State Bank, 112 Neb. 597, 200 N. W. 173.

In Blochman Commercial & Savings Bank v. F. G. Investment Co., 177 Cal. 762, 171 P. 943, 944, which was an action to foreclose a mortgage given by a corporation to a bank to secure a loan in excess of what the bank was permitted to make by the banking act then in force, the statute (Stats. Cal. 1911, p. 1014, sec. 13) provided: "No commercial bank shall make any loans to any person, company, corporation or firm to an amount exceeding one tenth part of the capital stock of such bank actually paid in and surplus, excepting

that no commercial bank shall be prohibited by this act from loaning to any person, company, corporation or firm any sum not exceeding five thousand dollars without security; provided, however, that a bank may loan to any person, company, corporation or firm a sum not exceeding twenty-five per centum of its capital stock actually paid in and surplus upon security worth at least fifteen per centum more than the amount of its loans." The borrower contended that the excess loan was void because prohibited by the statute. The supreme court held that the loan and mortgage were valid and could be enforced. In the course of its opinion the court said: "The act which, according to the contention of appellants, was violated by plaintiff's assignor in making the loan does not declare such a loan a void obligation. * * * It is not denied that the money was loaned, and that the notes and mortgages were executed to secure its repayment. In principle this case is quite similar to Brittan v. Oakland Bank of Savings, 124 Cal. 282, 57 P. 84, 71 Am. St. Rep. 58, wherein it was held that the provisions of section 578 of the Civil Code that no director of a savings bank shall borrow its funds, and that for so doing his office shall become vacant, cannot be invoked to defeat a pledge made by such director for money borrowed from the bank. Commenting upon the transaction whereby the director and the bank violated this statute, the court said: 'This, however, is of no advantage to the appellant, as the violation of the provision in question could only be availed of at the instance of the state or sovereign power. Jones v. New York Guaranty, etc., Co., 101 U. S. 628, 25 L. Ed. 1030; Union National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188.' "

For cases in line with the foregoing authorities, see German American State Bank of Chalco, Neb. v. Farmers' & Merchants' Savings Bank of Lidderdale et al., 203 Iowa, 276, 211 N. W. 386; Douglass v. State Bank of Orlando, 77 Fla. 830, 82 So. 593; Ossippee Hosiery & Woolen Manufacturing Co. v. Canney, 54 N. H. 295.

See, also, Leech et al. v. Armstrong et al., 52 Nev. 125, 283 P. 396, 399, 287 P. 174, which is in point in principle. In that decision we quoted from Bowditch v. New England M. L. I. Co., 141 Mass. 292, 4 N. E. 798, 55 Am. Rep. 474, as follows: "The Revised Statutes of the United States, respecting national banks, provide that a bank shall not lend to any one person, corporation, or firm a sum exceeding one-tenth part of the capital stock actually paid in, and that national banks shall not take real estate as collateral security except for debts previously contracted; and it has been repeatedly held that contracts made in contravention of the statute were not void." Union Gold Min. Co. v. Rocky Mountain National Bank, 96 U. S. 640, 24 L. Ed. 648; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443; Reynolds v. Crawsfordsville First National Bank, 112 U. S. 405, 5 S. Ct. 213, 28 L. Ed. 733.

In State v. Farmers' State Bank of Winside, supra, the court referred to several federal authorities which had passed upon questions involving the same principle recognized and applied by the Nebraska court. The following quotation from one will be sufficient to show the federal rule: "Moreover, it has been held repeatedly by this court that where the provisions of the national banking act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties." Thompson v. St. Nicholas Nat. Bank, 146 U. S. 240, 13 S. Ct. 66, 69, 36 L. Ed. 956; National Bank v. Matthews, 98 U. S. 621, 627, 25 L. Ed. 188; National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443; First National Bank of Xenia v. Stewart, 107 U. S. 676, 2 S. Ct. 778, 27 L. Ed. 592.

Appellants rely strongly upon American Southern National Bank v. Smith, 170 Ky. 512, 186 S. W. 482, Ann. Cas. 1918B, 959, and Divide County v. Baird, 55

N. D. 45, 212 N. W. 236, 51 A. L. R. 296. The latter, we think, is clearly distinguishable from the instant case. The former sustains appellants' contention, but our understanding of the principle applicable to a construction of section 684 persuades us to lay the Kentucky case out of view. We are satisfied that the legislature did not intend to check the giving of a preference or the borrowing of money in excess of its paid-up capital stock by a bank, by prescribing a forfeiture. If it did, it would have been quite easy to say so, as did the legislature of 1933; and borrowing the language of Mr. Justice Swayne in National Bank v. Matthews, supra, as to a similar situation, "it is hardly to be believed that this would not have been done, instead of leaving the question to be settled by the uncertain result of litigation and judicial decision."

The transaction was entered into in good faith, no question of fraud is involved and the money borrowed in excess of statutory limitation went to the benefit of the Winnemucca State Bank & Trust Company.

The judgment of the lower court should be affirmed, and it is so ordered.