MODESTO DELLAMONICA AND MARGUERITA
DELLAMONICA, Appellants, *v.* LYON COUNTY
BANK MORTGAGE CORPORATION, a Corpora-
tion, Respondent.

No. 3216

April 5, 1938.                                    78 P. (2d) 89.

*Platt & Sinai,* for Appellants:

*A. L. Haight,* for Respondent:

# OPINION

By the Court, DUCKER, J.:

This action instituted by the bank examiner, and for whom the present plaintiff was substituted as his successor in interest, is to recover possession of a certain note and mortgage alleged to have been illegally transferred by the Lyon County Bank. Judgment went for plaintiff. This appeal is taken therefrom and from the order denying a motion for a new trial. The parties will be referred to hereinafter as plaintiff and defendants, or the latter by their proper names.

The transaction challenged took place on November 23, 1931. On that date the cashier of the bank, with the approval of the directors, assigned to the defendant Mrs. Dellamonica a note for $12,000 secured by a mortgage on real estate executed by one Shehady and wife. As a part of the transaction, with the consent of defendants, $9,000 was charged against the deposit of Mrs. Dellamonica, and $3,000 against the deposit of Dellamonica. Subsequently a new note and mortgage were taken by Mrs. Dellamonica from the Shehadys in lieu of the originals. The defendants had been depositors in the bank for some time prior to the transactions, and Dellamonica was at that time, and for a number of years prior thereto had been, a director, participating actively as such.

The bank suspended business on February 16, 1932, and the bank examiner took possession on the next day.

The allegations of the second amended complaint showed that the transaction consummated when the bank was in an insolvent condition constituted a preference.

The relief prayed for was that the assignment be declared without consideration and void; that it be declared to be a preference as between the creditors of the bank, and void; and that the defendants be ordered

and directed to assign, convey, and deliver said promissory note and mortgage to plaintiff together with all payments, benefits, and advantages made or accruing to or derived by the defendants therefrom or in connection therewith; and for such other relief as might seem meet and proper.

Defendants contend that said complaint does not state a cause of action, in that it demands a forfeiture of the note and mortgage without an allegation of tender of a return of the consideration. They assert this to be true by reason of the equitable maxim that he who seeks equity must do equity. It does not appear that the case was presented by the plaintiff on the theory of a forfeiture, but rather on the theory that the assignment was void for want of power in the bank to make it.

██ Such want of power is a fact if the allegations of the second amended complaint are true, and they must be taken as true in determining its sufficiency. Assuming their truth, a fraud was committed on the innocent depositors of the bank in whose behalf the action is brought. Under such circumstances no tender of equity is necessary to maintain the action. The assignment being void, the rights defendants had as depositors in the insolvent bank to a pro rata share of its assets are as they were before the illegal transaction. This legal effect was recognized by the court in its judgment wherein it was adjudged as follows: "That the defendants be classed as and adjudged to be insecured or general claimants against the assets of said Lyon County Bank in the following amounts, etc., and be entitled to dividends or disbursements accordingly as may from time to time be made or authorized by the plaintiff corporation or its successor."

██ The case of Smith v. Keener, 51 S. D. 124, 212 N. W. 498, 499, is in point. It was an action of an equitable nature to cancel a transfer of promissory notes and warrants made by the cashier from the bank to himself as administrator of an estate and paid for by charging the same to his checking account as administrator,

when he knew the bank was insolvent. An allegation of return or offer to return consideration of the transfer was held not essential to statement of a cause of action. The court said: "It is urged that the complaint is demurrable because plaintiff has not alleged a return, or an offer to return, of the consideration received by the bank for the transfer of the paper. We have never understood that the maxim, 'He who seeks equity must do equity,' was a rule of pleading. When a party invokes the aid of equity, he subjects himself to the imposition of such terms as established equitable principles require (Story, Eq. Jurisp. 14th Ed. sec. 72), but it is not always essential that he plead them. There can be no doubt that, if plaintiff recovers, the court will restore defendant to the position of depositor in the bank and as such a claimant against the assets of the bank."

To the same effect are Hadlock v. Calister, 85 Utah 510, 39 P. (2d) 1082; Texas P. Ry. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777; Citizens' State Bank v. First Nat. Bank, 98 Kan. 109, 157 P. 392, L. R. A. 1917A, 696.

The trial court found, inter alia, that said bank was on the 23d day of November 1931, the date of the alleged assignment, and at all times thereafter and for some time prior thereto, in an insolvent condition. Defendants contend that the evidence does not support this finding, and that the conclusion of the court that the assignment was void is unsound. We are contrary minded as to both contentions. The evidence which we think supports the finding of insolvency is substantially as follows:

Mrs. Dellamonica had been a depositor in the bank since July 19, 1918. On June 30, 1929, the balance of her deposit was $9,057.86, and continued above $9,000 to November 23, 1931. In August 1931 she sought to withdraw from the bank the entire amount of her deposit and was told by the assistant cashier that she would have to file a notice, for the bank would have to have a "little time to secure funds, maybe a month or two." The

bank had never before required a notice for withdrawal
of savings deposits. She gave such notice early in the
fall of that year, but was never able to withdraw her
deposit, and on November 23, 1931, the cashier of the
bank, after conferring with the president, traded the
Shehady note and mortgage to her, debiting her deposit
and Dellamonica's deposit with the sums heretofore
stated. The transaction was later ratified by the board
of directors and a formal assignment executed and
recorded. Prior thereto and on September 9, 1931, an
official examination of the condition of the bank was
made by E. J. Seaborn as state bank examiner. A writ-
ten report thereof was made by him and a copy of the
same filed with the bank during that month. This report
showed that the actual value of the bank assets lacked
$18,887.04 of being sufficient to pay its liabilities. The
bank examiner testified as to the correctness of this
report and that at the time of his examination the bank
was insolvent; that the bank was taken over by him
in February 1932, and he remained in possession of it
until April 1934, when its assets were turned over to
plaintiff Lyon County Bank Mortgage Corporation; that
during the period of two years that he was so in posses-
sion of the bank he found occasion to investigate further
its assets and liabilities and was of the opinion that his
estimate of its assets made on September 9, 1931, on
the whole was high; and that he was able during that
period to collect only about $20,000 on its assets. Basing
his answer upon his knowledge of the affairs of the bank,
he testified that it was insolvent on November 23, 1931.

E. W. Blair testified that he had been serving as
manager of plaintiff since April 1, 1934; that the gen-
eral nature of his duties was to dispose of the assets of
the bank, holding the funds received for a dividend to
the depositors and creditors of the bank; and that his
estimate of the amount that would be ultimately recov-
ered for that purpose would be around 40 percent.

It appears from the evidence that after the bank

examiner made his examination and filed his report and before November 3, 1931, he addressed a letter to the president and vice president of the bank calling attention to the condition of its reserves as shown by his said report, and advising and requesting the levying of an assessment on the stockholders of 20 to 30 percent of the outstanding stock, payable by checks or funds from sources outside the bank, to replenish the funds of the bank and bring the reserve up to standard legal requirements; that the board of directors in compliance with said letter passed a resolution on the last-mentioned date that an assessment of 20 percent of the stock held be levied on each stockholder; that it was agreed that notices of assessment be withheld pending efforts of the directors to evolve a plan to improve reserves and comply with legal requirements; that such notices were never given; and that all of the efforts to rehabilitate the bank were unavailing.

■ The above summary is not exhaustive of the evidence bearing on the question of insolvency, as it does not include that adduced by defendants on that issue. We think, however, enough appears to show that the trial court's finding that the bank was insolvent when the assignment was made on November 23, 1931, finds support in the legal evidence. That being so, further statements of the evidence would serve no useful purpose and only prolong this opinion. Suffice it to say, however, that defendants' principal contention against the sufficiency of the foregoing evidence is that it consists mainly of the testimony of the bank examiner, who, on cross-examination, admitted that in a previous action entitled, "H. C. Guild et als., Plaintiffs, v. Lyon County Bank, a Corporation, et al., Defendants," he appeared as state bank examiner and verified an answer in which he denied an allegation of the complaint that the bank was insolvent prior to the 17th of February 1932. The inconsistency was explained by the bank examiner to the effect that his testimony herein was made purely on

the basis of the value of the physical assets in relation to the liabilities, while the verification was made on the advice of counsel to the effect that as the president and vice president had assured him that they would levy an assessment and raise the amount thereof from outside funds and place them in the bank, or had a plan by which it might reasonably be expected the bank might be rehabilitated, it could not be deemed insolvent. Defendants contend that the bank examiner's testimony as to the insolvency of the bank was thus entirely discredited and entitled to no weight. We cannot say it was entitled to no weight. That was for the trial court to decide.

The legislature has not left it to the courts to define insolvency, but has itself done so in section 25 of the bank act in effect when the transfer was made, section 674, Nev. Comp. Laws, as follows:

"A bank shall be deemed to be insolvent:

"First—When the actual value of its assets is insufficient to pay its liabilities;

"Second—When it is unable to meet the demands of its creditors in the usual and customary manner;

"Third—When it fails to make good its reserve as required by law."

The evidence summarized above tends to prove each of the three conditions of the statute existing when the Shehady note and mortgage were transferred to Mrs. Dellamonica.

Defendants contend that the transaction was legitimate because the cashier of the bank acted in good faith and without knowledge that the bank was in an insolvent condition. This contention is resolved against them by the trial court which found that the cashier knew, or should have known, that the bank was in an insolvent condition when, acting under the direction of the officers and directors of the bank, he assigned and set over to Mrs. Dellamonica said note and mortgage. That finding has support in the evidence.

■ It is contended that no preference was given on account of the good faith of Mrs. Dellamonica, which, it is claimed, was established by evidence showing that she had no knowledge of the insolvent condition of the bank and had been importuned by Shehady sometime before November 23, 1931, to take over the note and mortgage so that he could have the benefit of the lower rate of interest. The knowledge of a transferee from an insolvent bank of such condition is not an essential element of a preference. Luikart v. Hunt, 124 Neb. 642, 247 N. W. 790, 793. In the case, supra, a bank in an insolvent condition, known to its officers, assigned a note and mortgage constituting a part of its assets to a depositor in exchange for certificates of deposit. The evidence showed that the depositor did not have actual knowledge or notice that the bank was insolvent. The court held that the transfer was void, and as to the depositors' good faith said: "The law and the facts put Mrs. Hunt [Transferee] upon her notice. We are of the opinion that, as a matter of law, she was charged with notice of the unlawful act of the bank and of its fraud upon the other depositors, and so the district court was right in holding that the question of the knowledge of Mrs. Hunt as to the insolvency of the bank was immaterial."

In Hadlock v. Callister, 85 Utah 510, 39 P.(2d) 1082, the court held that invalidity of transfer of bank assets giving transferee preference does not depend on knowledge of transferee, but on the fact of insolvency, and the transferee is charged with notice that the transaction is illegal. To the same effect are: Bradley v. Guess, 165 S. C. 161, 163 S. E. 466; Walther v. McFerson, 92 Colo. 314, 20 P.(2d) 552; Citizens' State Bank v. First Nat. Bank, 98 Kan. 109, 157 P. 392, L. R. A. 1917A, 696.

We are of the opinion that the conclusion of the trial court that the transaction was a preference and void, is sound.

Section 35 of the bank act of 1911, Nev. Comp. Laws, sec. 684, provides in part: "No bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security, or otherwise."

■ True, this section does not declare preferences void, but the implication that they are so is plain. Citizens' State Bank v. First Nat. Bank, supra. Certainly the legislature in prohibiting preferences never intended its prohibition to be ineffectual. A result which might give a favored depositor the full measure of his deposit in an insolvent bank, leaving nothing for the others, is abhorrent to the fundamental maxim of equity, that equality is equity, and not to be presumed to be within the intention of a law-making body.

Neither the case of Organ v. Winnemucca State Bank, 55 Nev. 72, 26 P.(2d) 237, or Lothrop v. Seaborn, 55 Nev. 16, 23 P.(2d) 1109, is controlling or analogous in the instant case.

■ While there is some language in the former that supports defendants' contention that the assignment cannot be considered void, it was unnecessary to a determination of the question then before the court. The question of a preference was not involved in that case. This court will not hold itself bound by language not needful to the determination of questions in issue. It is what is decided that is authority, not what is said. Steptoe Live Stock Co. v. Gulley, 53 Nev. 163–173, 295 P. 772. In Lothrop v. Seaborn, supra, a deposit was made when the bank was insolvent. It was contended that the deposit was a preferred claim. The court answered by holding that mere insolvency was not sufficient to rescind the contract of deposit; that only hopeless insolvency could work such a rescission.

We indicated only the condition under which one making a deposit in an insolvent bank might recover the deposit. We did not construe, or attempt to construe, the term "insolvency" employed in the banking act to mean hopeless insolvency, as defendant contends.

The judgment and order denying the motion for a new trial are affirmed.

ON PETITION FOR REHEARING

May 5, 1938.

*Per Curiam:*

Rehearing denied.