## LYON COUNTY BANK MORTGAGE COR-PORATION v. TOBIN.

### No. 2721.

District Court, D. Nevada.

June 16, 1938.

George L. Sanford, of Carson City, Nev., and A. L. Haight, of Fallon, Nev., for complainant.

N. J. Barry, of Reno, Nev., for defendant.

NORCROSS, District Judge.

The Lyon County Bank, in pursuance of the laws of the State of Nevada relating to banks, on February 16, 1932, was taken over by the State Bank Examiner as an insolvent bank. On December 12, 1932, the Reno National Bank was adjudged to be insolvent by the Comptroller of the Currency and W. J. Tobin was appointed and qualified as Receiver thereof. In pursuance of judgment and decree of the State District Court entered October 26, 1933, in accord with the State banking laws, the State Banking Examiner transferred all property of the said Lyon County Bank to Lyon County Bank Mortgage Corporation, complainant herein.

On July 1, 1931, said Lyon County Bank negotiated a loan from said Reno National Bank in the sum of $60,500 and executed a formal note therefor payable "on demand * * * with interest thereon at the rate of eight per cent per annum from date until paid. Interest payable on demand, also after judgment". The Lyon County Bank also delivered to the Reno National Bank, pledged as collateral security, certain bonds and notes of a total face value in excess of the amount of the loan. At the time the Lyon County Bank was taken over by the State Bank Examiner, it had a deposit account with the Reno National in the sum of $956.36, which was later credited upon the note. Defendant's answer alleges that at the time the Reno National Bank was taken over by the receiver there was due as principal on said note the sum of $59,543.-64. By its answer, defendant admits the collection of $14,658.84, in the form of interest paid on pledged securities, and the application of such amount to the discharge of claimed accrued interest on the note of the Lyon County Bank. Defendant claims a balance due on principal of said note in the sum of $9,316.94, together with interest thereon from October 21, 1936. Complainant alleges the total amount due upon principal and interest at the date the Lyon County Bank was taken over by the State Bank Examiner was $60,148.64; total payments received by defendant in the sum of $65,841.90, and, hence, defendant is indebted to complainant in the sum of $4,736.90. Complainant prays judgment in this amount and for return of certain pledged securities and for general relief.

Questions of law presented upon the facts of this case are whether the amount of indebtedness of the Lyon County Bank to the Reno National Bank is finally determined as of the date of insolvency of the Lyon County Bank and its taking over by the State Bank Examiner and thereafter no interest would accrue thereon, which is the contention of complainant, or whether, where such indebtedness is secured by interest bearing pledges, interest derived therefrom may be applied in discharge of interest which does accrue thereon, which is the contention of defendant.

Upon the trial it appeared from exhibits introduced that defendant had credited payments received upon collateral whether as principal or interest mainly upon the principal of the note and as so indorsed thereon the balance on the principal of the note as of October 21, 1936, was but one ($1) dollar and a balance due on interest as of that date in the sum of $7,698.52. Following receipt of a letter of date December 16, 1936, from the Executive Assistant Counsel of the Comptroller of the Currency, advising defendant that—"under the rule stated in the case of Gamble v. Wimberly, 4 Cir., 44 F.2d 329, you are entitled to retain the pledged assets and apply toward interest due on your claim after suspension of the Lyon County Bank all income earned upon and collected from the pledged assets after the date of closing of the Lyon Company Bank."—the defendant made a revision of said previous indorsements resulting in a balance due on principal as of October 21, 1936, of $9,316.94.

The securities pledged by the Lyon County Bank consisted of six $1,000, First Lien Coupon Certificates of the Mortgage Security Corporation of America, of January 1, 1941 maturity; Twenty-two $1,000, Walker River Irrigation District First Issue, Series 1, 6% Bonds, maturity January 1, 1940; Six promissory notes, secured by mortgages, executed during the years 1930 and 1931, in the total principal amounts of $67,100.

It is complainant's contention that the Lyon County Bank was not liable for interest upon its said note to the Reno National Bank after the date of its insolvency. Complainant relies on the provisions of sections 35 and 53 of the State Bank Act approved March 22, 1911, St.1911, c. 150, Nevada Compiled Laws 1929, Vol. 1, section 650 et seq. Section 35, as amended March 2, 1931, St.1931, c. 35, reads:

"No bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security or otherwise; provided, however, that any bank may secure funds deposited with such bank by the United States, state, or counties of the state by pledging acceptable assets of the bank as collateral security; provided further, that any bank may borrow money for temporary purposes, not to exceed the amount of its paid-up capital, and may pledge any of its assets as collateral security therefor; provided further, that when it shall appear that a bank is borrowing habitually for the purpose of conducting its business, the bank examiner may require such bank to pay off such borrowed money. Nothing herein shall prevent any bank from rediscounting in good faith and indorsing any of its negotiable notes."

By section 53 it is provided:

"Whenever it shall appear * * * from any examination or report provided for in this act, the examiner shall have reason to conclude that such bank is in an unsafe or unsound condition to transact the business of banking, or that it is unsafe and inexpedient for such bank to continue in business, the examiner may forthwith take possession of the property and business of such bank and retain such possession until such bank shall resume business or its affairs be finally liquidated as herein provided. No bank, corporation, firm or individual knowing of such taking possession by the examiner, shall have a lien or charge for any payment, advance or clearance thereafter made, or liability thereafter incurred against any of the assets of the bank of whose property and business the examiner shall have taken possession as aforesaid * * * ."

It is clear from the reading of section 35 that the Lyon County Bank was authorized to negotiate the loan in question and to "pledge any of its assets as collateral security therefor". There is nothing in the provisions of section 53, supra, that would affect pledged assets given to secure the payment of a note issued in pursuance of the provisions of said section 35. It has been contended that interest accruing upon the note after the insolvency of the Lyon County Bank was a liability "thereafter incurred within the meaning of said section 53". This contention is without merit as will hereafter appear.

The State Banking Act of March 24, 1909, St.1909, c. 191, made the following provision:

"Sec. 48. The claims of depositors, for deposits, and claims of holders of exchange shall have priority over all other claims, except Federal, State, county and municipal taxes, and subject to such taxes, shall at the time of closing of the bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership; upon proof there-

of, they shall be paid immediately out of the available cash in the hands of the receiver. * * *" See Washington-Alaska Bank v. Dexter Horton Nat. Bank, 9 Cir., 263 F. 304, 310.

The case last cited involved the question whether the Washington-Alaska Bank was subject to the banking laws of the State of Nevada, said bank having been organized under the laws of the State of Nevada. The Circuit Court of Appeals of this Circuit held that the banking laws of Nevada were not applicable, as the bank was doing business in the Territory of Alaska. So holding, the Court decided the question here presented in favor of the Dexter Horton National Bank as follows:

"A pledge which secures an interest-bearing debt secures the interest as much as the principal of the debt." Citing authorities page 306.

Commenting on the case last cited the Circuit Court of Appeals for this Ninth Circuit in Douglass v. Thurston County, 86 F.2d 899, 910, said:

"In support of his contention in favor of the allowance of interest after the bank's insolvency, the treasurer relies upon a single decision—that of Washington-Alaska Bank v. Dexter Horton Nat. Bank (C.C.A.9) 263 F. 304, 306, 307. That case is easily distinguishable from the one at bar. There the national bank was the plaintiff, seeking to foreclose a lien on collateral given by a state bank. The national bank laws dealing with the question of interest, after insolvency, on deposits held by a national bank, were therefore not involved in that suit."

In the case of Gamble v. Wimberly, 44 F.2d 329 the Circuit Court of Appeals for the Fourth Circuit, quoting from syllabus, held:

"Secured creditor of national bank in liquidating claim can retain interest and dividends accruing on collateral since date of debtor bank's insolvency (12 U.S.C.A. § 194)."

The contention of defendant respecting the claimed right to subject the pledged securities to the payment of interest accrued subsequent to the insolvency of the Lyon County Bank also finds support in the following authorities: Ticonic National Bank v. Sprague, 303 U.S. 406, 58 S. Ct. 612, 82 L.Ed. ——; Organ v. Winnemucca State Bank, 55 Nev. 72, 26 P.2d 237; 9 C.J.S., Banks and Banking, §§ 389, 513, 537.

Judgment for defendant.